MARTIN CESLAK, PLAINTIFF-RESPONDENT, v. MATTHEW KRAUSE, DEFENDANT-APPELLANT, AND ROMAN KRAUSE, DEFENDANT.

MARTIN CESLAK, APPELLANT, v. ROMAN KRAUSE, RESPONDENT.

Submitted May 29, 1931—Decided October 19, 1931.

For Martin Ceslak, *Brenner & Kresch* (*Alfred Brenner,* of counsel).

For Matthew Krause and Roman Krause, *McDermott, Enright & Carpenter (James D. Carpenter, Jr.,* of counsel).

The opinion of the court was delivered by

DALY, J. This case was tried before Judge Brown and a jury in the Hudson County Circuit Court. It arose from an automobile accident wherein Martin Ceslak, the plaintiff, sustained serious injuries. He claimed that he was run down by an automobile driven by the defendant Matthew Krause, and which automobile admittedly was owned by the defendant Roman Krause, the father of Matthew Krause. At the conclusion of the testimony, the trial judge directed a verdict for Roman Krause, upon the ground there was no proof of such relationship between the defendant Matthew Krause and the defendant Roman Krause, the owner of the car, that could cast any responsibility upon the owner for the operation of the car at the time of the alleged accident. As to Matthew Krause, the jury returned a verdict for the plaintiff against him for $15,000.

From the verdict in favor of Martin Ceslak against Matthew Krause, the defendant appeals on the grounds that the trial court refused (1) to grant defendant's motion for a nonsuit; (2) to grant the defendant's motion for the direction of a verdict; and the main reason he urges for his appeal is there was not sufficient proof before the jury to justify them in finding that the automobile driven by him on the night of the accident was the automobile which came into contact with the body of the plaintiff.

The plaintiff appeals upon the ground that the trial court erroneously granted the motion for a direction of a verdict made by the defendant Roman Krause.

Shortly before midnight of Sunday, June 17th, 1928, or shortly after the midnight, Martin Ceslak, the plaintiff, was walking southerly along the westerly sidewalk of Avenue E, Bayonne, and was crossing Standard Place, which enters Avenue E on the westerly side thereof. Avenue E, at this point, is about sixty feet in width and Standard Place about twenty-five feet in width. Standard Place, though a public

way, is a blind alley, beginning on the westerly side of Avenue E and running westerly about two hundred and fifty feet where it abruptly ends at a fence. The curb on Avenue E generally is about four inches high but in front of the entrance to this alley it is not over two inches in height, and there it is in a broken condition. The paved sidewalk of Avenue E continues at its same general level crossing Standard Place.

Ceslak testified that when he reached Standard Place he looked to the right and to the left, saw no automobile or lights, heard no horn, and had proceeded about half way across Standard Place, when he was knocked down and run over by an automobile which he was unable to describe because, as he says, after the collision his eyes were so covered with blood he was unable to make effective observation, and almost immediately after the accident lapsed into unconsciousness. There were no eye-witnesses to the occurrence.

Mrs. Joseph Rudzinski conducted a place of business at the corner of Avenue E and Standard Place. While in her store about this time she heard a moaning sound, and going out to inquire, she saw the body of Ceslak on the roadway of Standard Place, about six or seven feet west of the Avenue E sidewalk. When asked who was standing near him at that time, she replied: "There was three men coming from work," whom she did not know, and she further testified that after she came out of her store and saw the body of Cesalk upon the ground, she saw the defendant Matthew Krause coming from the direction of his garage in the alley, and that he, Krause, was then about thirty-four feet away. This distance she indicated by indicating from the witness chair to a point in the court room which admittedly was thirty-four feet.

Joseph Marianski, who was in the store of Mrs. Rudzinski, was called out by her and saw a man lying in the middle of Standard Place about seven or eight feet from the sidewalk in the direction of the Krause garage.

The defendant Matthew Krause, after he saw the man upon the ground, and that he was badly hurt, went to his home about fifty feet away and 'phoned police headquarters. The

police ambulance came in response to the call, and Ceslak was taken to the hospital. Fred E. Fritz, the first police officer to arrive at the scene, testified he found the body of Ceslak lying in the alley, about twelve to fifteen feet from the sidewalk, "toward the dead end of the alley," and that the first thing he noticed "was a pool of blood around his head."

There was evidence to completely justify a jury in finding as a fact that Ceslak had been struck down and run over by an automobile, and that when he was found in this alley, wounded and unconscious, his condition was due to that fact. Who, then, operated the automobile that struck down and ran over Ceslak?

The testimony of the defendant Matthew Krause compels the conclusion that he, Matthew Krause, drove a Packard sedan over the Avenue E sidewalk, and about two hundred feet up this narrow alley to his garage, not more than ten or fifteen minutes before he, Krause, found Ceslak's prostrate body in the alley. He, Krause, had testified that when he crossed the sidewalk there was no one on the sidewalk; when he drove up the alley he saw no one; and, then these questions were put and answers given, upon his direct examination:

"*Q.* Can you tell the period of time you consumed from the time you crossed the sidewalk at Standard Place up to the time you locked the door [the garage door] and were ready to come out? *A.* I would say there was no hurry, never was in a hurry.

"*Q.* Let's get down to this night.

"The court: How long did it take you?

"The witness: About ten to fifteen minutes at the most.

"*Q.* What happened after you locked the door when the car was in the garage? *A.* After locking the door, I was walking out to Avenue E I seen a fellow step over someone lying on the ground. Of course, I didn't pay much attention to it. I thought it was a couple of drunks.

"Mr. Brenner: I object to that.

"*Q.* Don't tell us what you think. *A.* As I got down closer to him, I heard a moaning sound that attracted my attention. I walked over there and tried to inquire what it was, and getting over close enough, I seen this man was hurt pretty bad."

Krause's testimony may be summarized as follows: He took out his father's automobile for his own pleasure about eight o'clock in the evening; had been to the Red Men's club of which he was a member, and, shortly after midnight, he operated his Packard sedan southerly along Avenue E to Standard Place on which street, or alley, he intended to move westerly to his garage which was on that alley about two hundred feet in from Avenue E. Before entering Standard Place, because of the bumpy curbstone (which as heretofore stated was not over two inches high), he stopped his car, lighted his bright headlights and started slowly across the curbstone and sidewalk; and that at the time he was crossing the sidewalk he was going about two miles an hour, and that there was no one on the sidewalk as he crossed into the alley. Because of the narrowness of the alley, requiring him to do some backing in order to enter the garage, and because of the time necessary to place his sedan in the garage so that the trucks already there could be conveniently moved in the morning, a period of from ten to fifteen minutes "at the most" elapsed before he left the garage and proceeded down the alley to Avenue E. In answers to specific questions from the trial judge, Krause said that when he drove into the alley, Ceslak was not lying where he afterwards saw him; that there was no one in the alley when he drove into it from Avenue E to his garage; that while he was in the garage he did not hear any vehicles passing in or out of the alley; and that he did not hear any sounds from the alley while he was in the garage.

It is not necessary to detail further the testimony of the different witnesses, excepting to state that the testimony of several of the police officers was to the effect that they found a pool of blood in the middle of the roadway of the alley, about ten feet in from the property line; that the pool was right in the center of automobile tire marks, and that

these tire marks, on the fine cinders which topped the roadway, extended about two hundred feet from the pool of blood to the Krause garage; and that there were no other tire marks in the alley.

The proved facts and circumstances in this case amply warranted the jury in finding that Martin Ceslak, the plaintiff, was struck and run down by an automobile, negligently operated; that that was the proximate cause of the injuries for which he sought recovery of damages; and that such automobile was operated by Matthew Krause. *Wiley* v. *West Jersey Railroad Co.*, 44 *N. J. L.* 247; *Suburban Electric Co.* v. *Nugent*, 58 *Id.* 658; *Austin* v. *Pennsylvania Railroad*, 82 *Id.* 416.

As to the appeal from the ruling of the trial judge in directing a verdict in favor of the defendant Roman Krause, the testimony showed that the automobile was owned by Roman Krause; that his son had a key to it, and was free to use it whenever he pleased. On this particular night he took this automobile without asking the consent of anyone, and he drove it simply and solely for his own pleasure. There was no member of his family in the car; he, alone, was in the car from the time he took it out of the garage about eight o'clock in the evening until it was again placed in the garage. At the time of this accident, Matthew Krause was in no sense the servant or agent of Roman Krause, the owner of the car. The trial judge was right in directing the verdict which he did in favor of the defendant Roman Krause. He followed the law as decided by this court in *Doran* v. *Thomsen*, 76 *N. J. L.* 754.

Each of the judgments below is affirmed, with costs.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 13.

*For reversal*—None.