## HENRIQUES v. FREISINGER et al.
### No. 4920.

Circuit Court of Appeals, Third Circuit.
March 3, 1933.

Richard J. Mackey, of New York City, for appellant.

Collins & Corbin, of Jersey City, N. J. (Charles W. Broadhurst and Edward A. Markley, both of Jersey City, N. J., of counsel), for appellees.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from a judgment of the district court entered upon the motion of the defendants for a nonsuit at the conclusion of plaintiff's testimony on the ground that there was no evidence to submit to the jury.

Some time between 11 and 12 o'clock on the morning of October 18, 1930, Arthur Simigilo, who was employed by Sigmund Freisinger, was driving a one-ton Ford truck with a closed body in a southerly direction along Seventh avenue approaching Twenty-Third street in the city of New York. The truck was fifteen to twenty feet long, for the body extended some little distance back of the rear wheels. Traffic on Seventh avenue and Twenty-Third street is controlled by traffic lights, and as the truck approached Twenty-Third street the light was green, indicating that the truck should cross Twenty-Third street. The truck was going south on Seventh avenue, with its wheels just a little on the inside, or left, side of the rails of the south-bound trolley track, the right wheels being about six inches on the inside, toward the east, of the right-hand rail of the south-bound track on Seventh avenue. There was a safety aisle on the right of the truck as it approached Twenty-Third street where people stood who desired to take the trolley going south on Seventh avenue. People were standing in that safety aisle which was marked by concrete posts at each end. The truck approached the safety aisle at a speed of ten to fifteen miles an hour. When it was ten or fifteen feet away, the driver blew his horn to warn the people of his approach. No person or vehicle attempted to cross Seventh avenue in front of the truck. The light was green and so he drove on to cross Twenty-Third street.

After the truck had passed the safety aisle or part of it and about half of the truck was past the north crosswalk of Twenty-Third street, the driver heard a thump at the rear of his truck. He applied the brakes on the truck, which immediately stopped, and his helper looked out the side of the truck and saw Maurice Cecil Henriques lying on the street with his head pointing south. The driver and his helper got out, put Mr. Henriques into the truck, and went on south down Seventh avenue several blocks until they found a police officer, whom they told of the accident. They then took Mr. Henriques to the New York Hospital and made a formal report of the matter to the police.

Mr. Henriques died two days later, October 20, 1930, from a fracture of the skull, laceration of the brain, and cerebral compression, and this suit was brought to recover damages for his death.

This is substantially all the testimony in the case, and the sole question is whether or not it was sufficient to support an inference by the jury that the defendants were negligent. If it was, the court erred in granting the nonsuit; if it was not, the judgment should be affirmed.

The plaintiff contends that "the testimony showed the existence of such circumstances as

would justify the inference that the death (of Mr. Henriques) was caused by the wrongful act of the defendants and excluded the idea that it was due to a cause with which the defendants were unconnected."

The plaintiff argues that the fact of the accident, under the circumstances as stated above, clearly indicates that the death of Mr. Henriques was caused by being struck with the truck and that "the defendants should have managed their truck in such manner as to prevent it striking against people standing in the safety aisle."

In support of this argument plaintiff cites a number of cases on which he relies. The case of Suburban Electric Co. v. Nugent, 58 N. J. Law, 658, 34 A. 1069, 32 L. R. A. 700, he says, "is perhaps the leading case in laying down the theory upon which a jury is entitled to draw inferences where it is impossible to produce direct evidence."

In that case it was shown that there was fastened upon the pole at the foot of which decedent's body was found, a reel, around which was wound a wire rope used for the purpose of raising and lowering one of the defendant's arc lamps; that the reel was about on a level with the top of a man's head, and that the wire rope around it was practically uninsulated and was heavily charged with electricity; that the post mortem examination showed that the decedent had not suffered any injury like a blow; that all his organs were in normal condition; that his death was not caused by disease of any kind; that a freshly made burn ran all the way across decedent's hand; and that his blood was in an abnormal state, its condition being such as is found in the bodies of persons who have died of electric shock. These facts were submitted to the jury, and from them it reached the conclusion that the decedent came to his death through contact with the uninsulated wire and that the defendant was negligent in thus leaving the wire where the decedent would come in contact with it.

Another case the plaintiff relies upon is Ceslak v. Krause, 108 N. J. Law, 350, 156 A. 461. In this case Ceslak testified that he was walking along the sidewalk of a street from which a blind alley led. When he was about halfway across the alley he was knocked down and run over by an automobile which evidently had turned into the alley from the street. The blood resulting from the injury appeared in the automobile tracks from the place where the plaintiff was knocked down, to the defendant's garage which opened into the alley. The defendant drove his car from the street up the alley to his garage about the time of the accident and no other car than defendant's had entered the alley after the accident. From these facts the jury was permitted to find that the defendant's automobile had knocked Ceslak down and run over him. Negligence seems to have been practically admitted, if it was Krause's automobile that inflicted the injury, for the real question which the Supreme Court of New Jersey emphasized was as to whether or not it was Krause's automobile that struck Ceslak. The court properly found that the evidence was sufficient to submit to the jury on this point. In these and the other cases cited by the plaintiff, the proofs showed negligence on which a verdict against the defendant might be predicated.

█ The accident causing the death of Mr. Henriques was most unfortunate, but no negligence whatever, and no facts from which negligence on the part of the defendant could be reasonably inferred, was shown. On the contrary, the evidence shows that the truck was being driven slowly, its horn was blown, and nobody was crossing Seventh avenue in front of the truck when it passed the safety aisle and started to cross Twenty-Third street. The thump came somewhere against the rear of the truck. Whether or not the rear wheel of the truck passed over the decedent is not known. Whether or not he ran into the side of the truck or was pushed against it is likewise unknown. Under the evidence in this case an opinion as to how the accident occurred and what caused it would be a mere guess, and the jury may not guess. It may not draw inferences without sufficient facts on which to predicate them. If it were to guess that the "thump" was due to contact of the decedent with the truck, it would have to go further and guess that the defendants were negligent and that their negligence was the proximate cause of the death. There is no evidence from which such conclusion can be legally drawn. Under the doctrine laid down in our cases of Reading Company v. Boyer (C. C. A.) 6 F.(2d) 185; Philadelphia & Reading Company v. Thirouin (C. C. A.) 9 F.(2d) 856; Dobbyn v. Boat Repairing Company (C. C. A.) 25 F.(2d) 283; Szczepanski v. Pennsylvania Railroad Company (C. C. A.) 36 F.(2d) 1022; Lapp v. Pennsylvania R. R. Co. (C. C. A.) 51 F.(2d) 477; and many from the courts of New Jersey and elsewhere, we must hold that the learned trial judge properly refused to submit the evidence to the consideration of the jury.

The judgment is affirmed.