UNITED STATES of America,
Plaintiff–Appellee,

v.

Clyde A. GATEWOOD, Defendant–
Appellant.

No. 94–6446.

United States Court of Appeals,
Sixth Circuit.

Argued May 25, 1995.

Decided Aug. 1, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 18, 1995.*

* Jones, Circuit Judge, would grant rehearing for the reasons stated in his dissent.

Timothy R. DiScenza, Asst. U.S. Atty., Paul O'Brien (argued and briefed), Office of U.S. Atty., Memphis, TN, for plaintiff-appellee.

April R. Ferguson, Federal Public Defender's Office, Memphis, TN (argued and briefed), for defendant-appellant.

Before: JONES, GUY, and BOGGS, Circuit Judges.

GUY, J., delivered the opinion of the court, in which BOGGS, J., joined. JONES, J. (pp. 251–52), delivered a separate dissenting opinion.

GUY, Circuit Judge.

The defendant, Clyde Gatewood, entered a plea of guilty to one count of possessing cocaine base with intent to distribute. 21 U.S.C. § 846. Prior to pleading guilty, Gatewood had filed a motion to suppress evidence seized during the execution of a search warrant. The motion was denied after a hearing was held, and Gatewood reserved the right to challenge this denial on appeal at the time he entered his guilty plea.

The only contention made on appeal is that the officers executing the search warrant failed to comply with the "knock and announce" rule codified in 18 U.S.C. § 3109; and accordingly, the evidence seized should have been suppressed. Our review of the record convinces us that the trial judge properly denied the motion to suppress and we affirm.

## I.

Officers of the Shelby County Sheriff's Department made a controlled delivery of narcotics at 580 Old Thomas, Unit 71, Memphis, Tennessee. The defendant received and signed for the package which originally contained 25 grams of cocaine base.

As soon as the controlled delivery was completed, Shelby County officers, who had surveilled the delivery, proceeded to execute a search warrant at the address where the package was received. The record does not reveal what occurred after the officers entered the premises to be searched, since the only issue raised at the suppression hearing was the officers' manner of entry.

## II.

The federal rule that regulates forced entries in connection with the execution of search warrants is found at 18 U.S.C. § 3109. This section reads in relevant part:

**Breaking doors or windows for entry or exit**

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance. . . .

Section 3109 is a codification of the common law of unannounced entry. *Sabbath v. United States,* 391 U.S. 585, 589, 88 S.Ct. 1755, 1757–58, 20 L.Ed.2d 828 (1968).

■ The statute in question regulates only federal officers, however, and has no application when "state officers, acting totally without federal involvement, seize evidence that is later offered in a federal prosecution. . . ." *United States v. Moore,* 956 F.2d 843, 847 (8th Cir.1992) (footnote omitted). Such is the case here. The Supreme Court, however, has now determined that the common law knock-and-announce principle is an element of the reasonableness inquiry under the Fourth Amendment. *Wilson v. Arkansas,* —— U.S. ——, ——, 115 S.Ct. 1914, 1917–18, 131 L.Ed.2d 976 (1995).

■ The district judge did not engage in a reasonableness analysis, however, because he made a factual finding at the suppression hearing that the officers knocked and announced and then waited a sufficient length of time before entering. The evidence underlying this factual finding included a video tape of the actual entry, testimony from one of the officers effecting the entry, and testimony from three persons inside the house at the time entry was made.

The video clearly shows one of the officers "knocking" by kicking on the door with his

foot.[1] The video also shows what appears to be shouting by the officers, although the sound track of the video is not clear enough to make out what was being shouted. The video does *not* show the officers making a forcible entry[2] and it demonstrates an interval of approximately 10 seconds between announcement and entry.

All three persons inside the house who testified heard the knock. As to the interval between knocking and entry, one witness said three to four minutes, another five seconds and the third estimated 10 to 15 seconds. The officer who testified was not asked about the time interval, but the video was shown during his testimony.

Whatever the time interval actually might have been, the district court concluded it was adequate for Fourth Amendment purposes and we agree. In fact, it is not at all clear that any forcible entry actually occurred. Quinton Campbell, who was inside the house, testified:

Q. Okay. Could you hear a knock?

A. Yes, ma'am. I didn't consider it as a knock, I thought kids were playing at the door. The only thing I heard was boom and I seen a head fly past my window.

Q. What, slow down, saw what?

A. I saw a head run past my window, I thought it was just kids outside playing, and then I heard it again. I unlocked the door, when I unlocked it came open, whoom, and came in with guns and everything and said lay down. So I laid down.

Q. You said unlocked, is there a dead bolt?

A. That is what I unlocked, the dead bolt.

Officer McCoy testified in a similar vein on direct examination:

Q. Prior to you all going in there, did you all bang on the door to alert the occupants that you were there?

A. Yes.

Q. Was that by the way of a kick on the door?

A. Yes, sir.

Q. What kind of doors are those by the way?

A. They are heavy duty doors, I believe they have a steel frame. They are very heavy duty.

Q. After you alerted the occupants, did you all announce who you were?

A. Yes, sir.

Q. Did they open the door eventually?

A. Yes, sir, when we were at the door and identified ourselves, and I believe Lieutenant Roberson had kicked at the door two or three times, someone, when they unlocked it, opened the door, we stormed the door yelling narcotics.

On cross-examination, Officer McCoy further testified:

Q. Are you saying somebody opened it?

A. Yes, ma'am. There is no way physically that a man could kick those doors. As a matter of fact we didn't even bring a ram or tool, that is what we use to open those type doors, we have devices—door opening devices that we use to open those type doors.

We construe the evidence to indicate conclusively that there was no forcible entry, and thus neither § 3109 nor the Fourth Amendment is implicated. Even if we were to find that the evidence indicated that the entry was forcible, we agree with the district judge and conclude that the officers knocked and announced and then waited a reasonable length of time before entering.

**AFFIRMED.**[3]

---

1. The kick clearly was not intended to force the door, but only used as a method to bang on the door.

2. Unfortunately, someone stepped in front of the video camera during the entry and the video does not show the entirety of what occurred. It does show the door intact after entry, however, with no signs of damage and with people going in and out of the door and opening it and closing it without difficulty.

3. We limit our holding to the facts of this case and make no effort to establish any minimum time as meeting the standard of "reasonableness."

NATHANIEL R. JONES, Circuit Judge, dissenting.

The majority holds that there was no forcible entry in this case, and that even if the entry were determined to be forcible, that the officers knocked and announced and then waited a reasonable length of time before entering the apartment. I disagree with both conclusions.

The majority concludes that the testimony of Quinton Campbell and Officer McCoy establishes that an occupant of the apartment opened the door, and thus there was no forcible entry. My review of the evidence and the findings of the district court, however, reveal that it was only clearly established that the door was *unlocked* by Campbell. Campbell testified that he unlocked the door but that *he did not open the door.* J.A. at 83–84.[1] As indicated in the majority opinion, Officer McCoy responded affirmatively to questions of whether the door was "opened" by those inside. *See* Maj. Op. at 250. Nevertheless, the content of the officer's answers indicates that he was testifying that the door was *unlocked* from the inside. *See* J.A. at 90–91, 94. Furthermore, the district court did not make a finding of fact that the door was opened from the inside. Instead, the district court found that one occupant "had time to go up to the door and apparently *unlock* the door, at which time it *flew open.*" J.A. at 99–100 (emphasis added). The district court reiterated this finding a few moments later, stating that "on the totality of the circumstances here it seems to the court that there was a knock, there was an interval of time, *there was an opening of the latch from inside the door or the lock and then it was at that time that the door flew open.*" *See id.* at 101. Where a door is unlocked but not opened by those inside, there is a forcible entry triggering knock and announce principles. *See Sabbath v. United States,* 391 U.S. 585, 590, 88 S.Ct. 1755, 1758–59, 20 L.Ed.2d 828 (1968) ("An unannounced intrusion into a dwelling—what § 3109 basically proscribes— is no less an unannounced intrusion whether officers break down a door, force open a

chain lock on a partially open door, open a locked door by use of a passkey, or, as here, open a closed but unlocked door."); *United States v. Kemp,* 12 F.3d 1140, 1141 (D.C.Cir. 1994) (holding that "officer's entry through a closed door is a 'breaking' within the meaning of § 3109, regardless whether the door was locked"); *United States v. Tolliver,* 665 F.2d 1005, 1008 (11th Cir.) (holding that where "door to the apartment was not fully opened by an occupant, the force used by the agents to gain admittance invoked § 3109"), *cert. denied,* 456 U.S. 935, 102 S.Ct. 1991, 72 L.Ed.2d 455 (1982).

The majority also holds that even if there were a forcible entry, the officers knocked and announced and waited a reasonable amount of time before entering. Although I agree that the officers knocked and announced their presence, I do not believe that the officers waited a reasonable amount of time before entering the apartment. Three occupants of the apartment testified about the time between the officers' first knock and their entry into the apartment. Sheila Susana testified that three to four minutes passed. J.A. at 62, 67. Robert Bell testified that it was about five seconds. J.A. at 76–77. Quinton Campbell testified that it was about 10 or 15 seconds. J.A. at 83–84. My own review of the videotape indicates that not more than seven seconds elapsed between the first knock and the officers' entry into the apartment. I believe that under the facts of this case, this was an unreasonably short period for the officers to wait prior to forcibly entering the apartment.

This court has held

> that law enforcement officers may not take lightly the requirement of § 3109 that bursting into apartments is permitted only "after notice of [the officers'] authority and purpose [and they are] refused admittance...." 18 U.S.C. § 3109. Cases in which officers make a forced entry seconds after announcing their authority and purpose will be carefully scrutinized in the

---

1. Specifically Campbell testified as follows:
   Q. You said unlocked, is there a dead bolt?
   A. That is what I unlocked, the dead bolt.

   Q. Did you open the door?
   A. No, no ma'am, I did not open it.
   J.A. at 83–84.

future to determine whether there is compliance with the requirements of § 3109. *United States v. Nabors,* 901 F.2d 1351, 1354–55 (6th Cir.), *cert. denied,* 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990).[2] Given the nature of this reasonableness inquiry, the length of time that officers must wait before forcing an entry necessarily varies with the circumstances of each case. *United States v. Chambers,* 382 F.2d 910, 916 (6th Cir.1967). Nevertheless, my review of authority on this issue indicates that where officers have waited less than ten seconds after knocking and announcing before forcibly entering the premises, and there are no exigent circumstances to justify such a rapid entry, courts have generally found that such action violates § 3109. *See United States v. Marts,* 986 F.2d 1216, 1218 (8th Cir.1993) (holding that officers violated § 3109 where officers entered less than five seconds after knocking and announcing and there were no exigent circumstances to excuse this misconduct); *United States v. Rodriguez,* 663 F.Supp. 585, 587–89 (D.D.C.1987) (noting that "this Court has been unable to uncover any reported case in this or any other circuit, upholding the legitimacy of a forcible entry when the officers waited less than 10 to 20 seconds," listing cases, and holding that "3 to 5 seconds is insufficient time to constitute 'refused admittance' under [§ 3109]").

In its arguments before this court, the government appears to suggest that exigent circumstances justified the rapid entry here, as the government points out that "[n]arcotics are particularly susceptible to ready destruction, *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), and any extended delay after officers announce their presence would only allow drug traffickers the opportunity to destroy their contraband." Gov't Br. at 8. While it is true that the destruction of narcotics evidence can create an exigent circumstance justifying rapid entry, it does not automatically generate such

an exigency. *See Rodriguez,* 663 F.Supp. at 589 (holding that sole fact that narcotics are easily disposed of is not sufficient for creating exigent circumstance warranting rapid entry). Furthermore, in the instant case, I find the government's suggestion of a destruction of narcotics evidence exigency unpersuasive because the cocaine had been *removed* from the package prior to the controlled delivery. *See* J.A. at 8. As such, no reasonable person could fear that such narcotics evidence would be destroyed. Furthermore, the record contains no assertion that the officers believed, or had any reasonable basis for believing that it was likely that other narcotics would be found in the apartment. Consequently, I conclude that the officers could have no reasonable belief that it was likely that any narcotics evidence would be destroyed in a manner warranting their extremely rapid entry into the apartment. Finally, the government has not argued that the safety of the officers justified their rapid entry. In sum, I believe that there were no exigent circumstances that justified the officers' rapid entry into the apartment in this case.

Although the officers did knock and announce their presence, they waited less than seven seconds before forcibly entering the apartment in the absence of exigent circumstances. I conclude that the officers' actions violated common-law knock and announce principles as embodied in § 3109, and thus violated Gatewood's right to a reasonable search under the Fourth Amendment. I would thus reverse the district court's denial of the motion to suppress evidence and require that the evidence seized as a result of the unlawful search be suppressed. For the foregoing reasons, I dissent from the majority opinion.

---

**2.** Technically, as the majority opinion notes, 18 U.S.C. § 3109 is not applicable in this case. The Supreme Court, however, has described § 3109 as a codification of the common law. *See Sabbath,* 391 U.S. at 589, 591 n. 8, 88 S.Ct. at 1757–58, 1759 n. 8; *see also United States v. Finch,* 998 F.2d 349, 353 (6th Cir.1993) (noting the Supreme Court's description of § 3109 as a codification of the common law). In light of the

Supreme Court's recent decision in *Wilson v. Arkansas,* —— U.S. ——, ——, 115 S.Ct. 1914, 1916, 131 L.Ed.2d 976 (1995), that the common law knock-and-announce principle is an element of the reasonableness inquiry under the Fourth Amendment, I find caselaw interpreting application of the principles embodied in § 3109 to be instructive here.