**UNITED STATES of America, Plaintiff,**

v.

**Brian Matthew MAHER, Defendant.**

**No. 1:01CR64–01.**

United States District Court, W.D. Michigan, Southern Division.

Aug. 8, 2001.

Raymond E. Beckering, III, Grand Rapids, MI, for Plaintiff.

James S. Brady, Grand Rapids, MI, Robert L. Baldori, Okemos, MI, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

QUIST, District Judge.

The defendant, Brian Matthew Maher, has been charged with growing over 100

marijuana plants. The plants were discovered during a search executed by police officers of the City of Lansing, Michigan pursuant to a valid search warrant. No federal officers were involved in the search. Maher has moved to suppress the fruits of the search on the grounds that the Lansing police officers violated his rights under the Fourth Amendment to the Constitution of the United States because insufficient time elapsed between when the officers knocked and announced their presence and actually entered Maher's house. The Court heard testimony and oral argument on July 9, 2001.

## I. *Findings of Fact*

The relevant facts are largely undisputed. On February 1, 2001, acting on information provided by an informant, members of the Lansing Police Department obtained a valid warrant to search a house occupied by Maher and his girlfriend, Anna Beyer. The police officers who were going to search the premises were told, among other things, that Maher was growing a large number of marijuana plants in his basement and had a knife collection. The officers were not told that Maher had any firearms, and they were not told that Maher had any significant amount of readily disposable illegal drugs.

At about 8:46 pm on February 1, the police officers approached Maher's house. It was dark, and there were lights on in the house. Because lights were on in the house, the officers believed that someone was home. The house was not a large house, and it would take someone in the house only a few seconds to answer the door if the person were in the living room or dining room or even upstairs. The windows to the house, including the window in the front door, were covered with fabric, and it was impossible for the officers to see anyone in the house. Likewise, it was impossible for Maher to see out of the house. The officers were dressed in

helmets, jump suits, and bullet-proof vests. One of the officers carried a bullet-proof shield. The officers' helmets and the shield were well marked to indicate that the officers were, in fact, police officers.

Officer David M. Sileo was the officer designated to gain entry into the house. Another officer acted as "shield"—the officer carrying the shield who would lead the other officers into the house once the door was opened. When the officers got to the front door of the house, Officer Sileo knocked loudly on the door more than once and waited about five seconds. When no one responded, Sileo again knocked more than once and waited about another five seconds. Once again, when no one responded, Sileo knocked more than once and waited about five seconds. After this third knock, Sileo shouted, "police search warrant," waited about two (not more than three) seconds, and then forced the door open with a ram. In the process of forcing the door open with the ram, Sileo shattered the glass in the front door.

While Sileo was at the door knocking, Maher was on the telephone with his mother. Maher had no suspicion that police were at the door, and he did not respond to the knocking until he heard someone yell "police officers," and quickly thereafter the door was shattered. Maher hung up the telephone and started walking to the front door. When he saw police officers in his house, Maher immediately submitted to the authority of the officers. Ms. Beyer, who had heard three sets of knocks at the front door, came downstairs and was carried over the broken glass by Sileo.

During the search, the police officers found about 300 marijuana plants growing in Maher's basement. The so-called knife collection turned out to be a couple of harmless souvenir knives given to Maher by a friend and were encased in glass.

## II. *Conclusions of Law*

Maher does not claim any impropriety or inadequacy in the search warrant executed by the police officers. The government does not claim that there were exigent circumstances. Therefore, the sole legal issue is whether the officers violated Maher's right to be free from unreasonable search and seizure by the manner in which the search warrant was executed. Specifically, did the officers violate the so-called "knock and announce rule"? Maher claims that the rule was violated because the police did not announce that they were police until after the third series of knocks and then waited only of couple of seconds before breaking into Maher's house. The government contends that the "knock and announce" rule was not violated because the officers knocked and waited three times, about 17 seconds, for Maher or someone in the house to come to the door. So, in essence, the question boils down to: Do you start counting from the time of the first knock to determine reasonableness, or do you start counting from the time that the police announce that they are doing the knocking?

 "The Fourth Amendment embodies the common law principle that police officers should knock and announce their presence before they enter a private home." *United States v. Cantu*, 230 F.3d 148, 151 (5th Cir.2000)(citing *Richards v. Wisconsin*, 520 U.S. 385, 387, 117 S.Ct. 1416, 1418, 137 L.Ed.2d 615 (1997)). The knock and announce rule "forms a part of the reasonableness inquiry under the Fourth Amendment."[1] *Wilson v. Arkansas*, 514 U.S. 927, 929, 931–34, 115 S.Ct. 1914, 1915–18, 131 L.Ed.2d 976 (1995). "At its core, the 'knock and announce' rule serves to respect the sanctity of a person's home by affording notice to those inside so that they may open the door peaceably and without the needless destruction of property, as well as by avoiding the possibility of a violent confrontation if those inside mistook the police for intruders." *United States v. Spikes*, 158 F.3d 913, 925 (6th Cir.1998). The rule thus serves the important purposes of: "(1) reducing the potential for violence to both the police officers and the occupants of the house into which entry is sought; (2) curbing the needless destruction of private property; and (3) protecting the individual's right to privacy in his or her house." *United States v. Dice*, 200 F.3d 978, 982 (6th Cir.2000)(citing *United States v. Bates*, 84 F.3d 790, 794 (6th Cir.1996)).

 Although referred to as the knock and announce rule, the rule does not actually require law enforcement officers to knock or use any particular words. *See United States v. Smith*, 63 F.3d 956, 962 (10th Cir.1995) *vacated on other grounds*, 516 U.S. 1105, 116 S.Ct. 900, 133 L.Ed.2d 834 (1996). In *United States v. Spikes*, 158 F.3d 913 (6th Cir.1998), the Sixth Circuit observed:

> The focus of the "knock and announce" rule "is properly not on what 'magic words' are spoken by the police," or whether the police rang the doorbell, "but rather on how these words and other actions of the police will be perceived by the occupant." *United States v. One Parcel of Real Property*, 873 F.2d 7, 9 (1st Cir.1989). The proper trigger point, therefore, is when those inside should have been alerted that the police wanted entry to execute a warrant. *See*

[1] The federal knock and announce statute, 18 U.S.C. § 3109, does not apply where the case involves application of a state warrant by state law enforcement officers. *See United States v. Gatewood*, 60 F.3d 248, 249 (6th Cir.1995). However, "cases under § 3109 can provide valid guidance on [a] constitutional claim [not involving § 3109]." *Smith*, 63 F.3d at 962.

*United States v. Smith,* 63 F.2d 956, 962 (10th Cir.1995)(noting that "[a]lthough the principle is commonly referred to as 'knock and announce,' the Court's holding in *Wilson* requires only an announcement"). This "measuring stick" comports more with the purpose of the rule—that a homeowner "know who is entering, why he is entering, and ... be given a reasonable opportunity to surrender his privacy voluntarily." La-Fave, § 4.8(a) at 599–600 (citations and quotations marks omitted).

*Id.* at 925; *see also United States v. Finch,* 998 F.2d 349, 354 (6th Cir.1993)(stating that "[i]n the best of worlds, compliance with the rule includes informing occupants that they are the police and that they demand entry because they have a search warrant"). The *Spikes* court also declined to adopt a "bright line rule" for determining whether police waited a reasonable period of time. Rather, the court held that all case-specific factors should be examined in determining whether the police waited a reasonable amount of time. *Spikes,* 158 F.3d at 926.

 The government contends that its actions were reasonable because the police officers knocked on the door several times, announced themselves as police officers, and waited approximately seventeen seconds from the time of the initial knock before using force to gain entry into the house. Had the officers announced themselves when they initially knocked on the door, the Court would have no difficulty concluding that the police officers waited a reasonable amount of time before using force. However, for some reason unknown to the Court,[2] the officers did not identify themselves as police officers until they had knocked three times and then only about two seconds before they broke into the house. The government attempts to gloss over this fact by arguing that because the police knocked multiple times and allowed several seconds to pass between knocks, Maher and Ms. Beyer had plenty of time to answer the door. This conclusion cannot be disputed. The problem with the government's argument is that, as recognized in *Spikes,* it is not the act of knocking that is crucial, but rather conveying notice to the occupants of the house that it is the police who seek entry so that the occupants have an opportunity to comply with the law. *Spikes,* 158 F.3d at 925 ("The proper trigger point, therefore, is when those inside should have been alerted that the police wanted entry to execute a warrant."). People refuse or fail to answer their doors for any number of reasons. The caller might be a nosy neighbor, a door-to-door salesman, a bill collector, an angry ex-girlfriend or boyfriend, or someone else whom the occupant wants to avoid. The occupant might be temporarily indisposed, as was Maher, who was on the telephone when the officers began to knock. Or, the occupant might consider it more important to complete whatever he or she is doing at the moment before answering the door. The announcement enables an occupant to discern the identity of the person at the door, realize that the door should be answered immediately, and avoid any consequences of failing to answer based on an incorrect assumption.[3] In the context of the federal knock and announce statute, the Sixth Circuit has observed that "[i]n our view, the identification of themselves as police and giving the occupants a reasonable time to respond are far more constitutionally significant than stating their purpose in de-

**2.** The Court is aware that the officers followed standard procedure but has no idea why that procedure includes the "knock" without the "announce".

**3.** The government has not cited any authority to support its assertion that people should recognize aggressive knocking as that of police officers.

manding entry...." *Finch*, 998 F.2d at 354. More recently, the Sixth Circuit has affirmed the importance of each component of the knock and announce rule: "A court can not sever the requirement that an officer wait a reasonable time before forcing his way into a residence from the requirement that he knock and announce his presence in the first place. To the contrary, only together do these requirements serve the interests [the rule is designed to protect]." *United States v. Dice*, 200 F.3d 978, 984 (6th Cir.2000).

 Because the officers did not inform Maher that they were police officers until after the final knock, the Court concludes that the point at which the announcement was made marks the time from which the reasonableness of the response time should be measured because that is the point at which Maher and Ms. Beyer should have been aware that it was the police who were at the door. As mentioned above, the period of time between the knock and announcement and the officers' use of force was about two seconds. However, reasonableness is not judged in seconds, but rather is based upon all the circumstances of the case. *Spikes*, 158 F.3d at 925–26.

The government asserts that the facts of this case are similar to the facts in *Spikes*, *United States v. Gatewood*, 60 F.3d 248 (6th Cir.1995), and *United States v. Johnson*, No. 98–3183, 2000 WL 712385 (6th Cir. May 24, 2000), all of which concluded that the police officers acted reasonably by waiting for only a few seconds before forcing entry. The Court finds these cases distinguishable from this case. In *Spikes*, the police officers first announced their presence and purpose with a bullhorn. Upon reaching the front porch, an officer pounded on the door while another officer again announced the officers' presence. The officers waited approximately 15 to 30 seconds before entering the house.

*Spikes*, 158 F.3d at 919. Prior to executing the warrant, the officers were aware that: (1) there were persons inside the house who might destroy evidence before it could be seized; and (2) the occupants of the residence were "drug traffickers who had taken measures to defend themselves and their drugs ... includ[ing] the use of police scanning equipment, the placement of lookouts in various strategic places within the home, and, most importantly, the presence of guns and armed guards." *Id.* at 926. In *Gatewood*, a police officer kicked the defendant's door several times, and the police identified themselves and waited approximately ten seconds before entering. *Gatewood*, 60 F.3d at 249–50. Although the court said that ten seconds was a reasonable amount of time, the court actually held that there was no forcible entry. *Id.* at 250 ("We construe the evidence to indicate conclusively that there was no forcible entry, and thus neither § 3109 nor the Fourth Amendment is implicated.") Finally, in *Johnson*, the police knocked on the door, yelled "police, search warrant", waited approximately five seconds, and then used force to enter the apartment. *Johnson*, 2000 WL 712385, at *1. Prior to conducting the search, the officers were aware that: (1) the house was located in a high drug traffic neighborhood and received high pedestrian traffic; (2) small, prepackaged quantities of drugs easily capable of being destroyed quickly were present; and (3) according to a confidential informant, guns were likely present in the apartment. *Id.* at *5. Although the Sixth Circuit agreed with the district judge's assessment of the case as a "close call", the court of appeals held that the police officers acted reasonably, noting that "[t]he presence of drugs lessens the time officers generally must wait before entering because they can reasonably assume persons with access to working plumbing facilities will try to destroy this

evidence," and "[t]he police need not wait long enough to be greeted by a 'barrage of bullets.' " *Id.* at \*4–5 (quoting *Spikes,* 158 F.3d at 926).

■ In this case, the officers used force about two seconds after identifying themselves. The government asserts that the presence of drugs and the fact that Maher had a knife collection justified a shorter period of time for a response. While it is true that drugs were involved, as in *Spikes, Gatewood,* and *Johnson,* the police officers in this case could not have believed that Maher had the ability to quickly and easily destroy the evidence because they knew that they were searching for a large number of marijuana plants that could not be flushed down the toilet. Furthermore, in contrast to *Spikes* and *Johnson,* the police officers had no reason to believe that guns were present in the residence. Thus, they had no reason to believe that they would be met by a "barrage of bullets." Although the officers were aware that Maher had a knife collection, there was no indication that Maher used the knives to protect his drugs, had taken other measures to protect himself or his drugs against the police or other drug dealers, or was a violent person. The Court finds the instant facts more on point with those in *Dice, supra,* than in the cases cited by the government. In *Dice,* the police knocked on the defendant's door, identified themselves, and after "a few" seconds broke the door down. The officers had no information that the defendant was armed or dangerous or that anyone else in the home was at risk of harm. Furthermore, the evidence seized included more than 1,900 marijuana plants and other items, which could not have been easily destroyed. The district court concluded that under the circumstances, the officers did not provide a reasonable time for the defendant to respond to the knock and announcement. *Dice,* 200 F.3d at 981–82. On appeal, the government conceded that the district court's conclusion that the officers did not wait a reasonable time was correct but argued that the evidence should not have been suppressed. *Id.* at 982. The court rejected the argument, noting that it was nothing "more than an attempt to circumvent [ ] clear and binding precedent that knock-and-announce violations require suppression...." *Id.* at 984.

Under the totality of the circumstances in this case, the Court concludes that the police officers did not afford Maher a reasonable amount of time to answer the door after identifying themselves as police officers. In the absence of any circumstances justifying a shorter period of time, waiting only two or three seconds did not satisfy the reasonableness requirement of the Fourth Amendment. For that reason, the search was illegal and the evidence must be suppressed.

### Conclusion

For the foregoing reasons, Maher's motion to suppress evidence will be granted.

An Order consistent with these Findings of Fact and Conclusions of Law will be entered.

### ORDER

In accordance with the Findings of Fact and Conclusions of Law filed this date,

**IT IS HEREBY ORDERED** that Defendant's Motion to Suppress Evidence (docket no. 14) is **GRANTED.** The government may not introduce into evidence nor mention the marijuana plants or other paraphernalia seized and/or observed during the search of 127 S. Hayford, Lansing, Michigan, on February 1, 2001.