**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Davisha I. FAVORS and Marcus A.**
**Curry, Defendants-Appellants.**

**Nos. 01-5834, 01-5882.**

United States Court of Appeals,
Sixth Circuit.

Sept. 3, 2003.

**378**

Victor L. Ivy, Asst. U.S. Attorney, U.S. Attorney's Office, Jackson, TN, for Plaintiff–Appellee.

Gerald L. Gulley, Jr., Baker, Gulley & Oldham, Knoxville, TN, Ramsdale O'De-Neal, Jr., Jackson, TN, for Defendants–Appellants.

Before KEITH, COLE, and COOK, Circuit Judges.

KEITH, Circuit Judge.

Defendants Davisha I. Favors (No. 01–5834) and Marcus A. Curry (No. 01–5882) were indicted and jointly charged with one count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). Curry alone was also charged with one count of possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c), and one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g). Curry and Favors were tried jointly. They jointly filed a motion to suppress evidence—drugs and a revolver—seized from Curry's residence pursuant to the execution of a search warrant. Curry and Favors also moved to suppress statements they made to police after they were arrested. The district court denied both motions, and Curry and Favors were convicted on all counts.

This timely appeal followed. Both Curry and Favors claim that the district court erred in denying their motion to suppress evidence seized in the search. In support of this argument, they claim that the search warrant was not supported by probable cause, and that the police failed to comply with the "knock and announce" rule in executing the warrant. In addition, Curry argues that the district court erred in denying his motion to suppress statements he made to authorities after his arrest. According to Curry, the police violated his rights under *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), by failing to honor his request for an attorney. For the reasons that follow, we reject these arguments and AFFIRM the convictions.

## I. BACKGROUND

On August 15, 2000, Sergeant Leslee Hallenback of the Jackson, Tennessee Po-

lice Department obtained a search warrant for the residence of Marcus Curry. The warrant was based on information that Sgt. Hallenback had received from a reliable informant. In an affidavit submitted in support of the warrant, Sgt. Hallenback explained that the informant had been inside Curry's residence within the last 72 hours and had observed Curry in possession of and distributing powder and crack cocaine. The informant also claimed to have been in the residence on over 25 recent occasions, observing Curry participating in drug transactions. Elsewhere in the affidavit, Sgt. Hallenback stated that the informant had been reliable in the past, providing Hallenback with information that led to two cocaine-related arrests within the last three months. The affidavit also stated that the informant had previously worked with other law enforcement agents investigating drug trafficking.

On the morning of August 18, 2000, officers of the Jackson Police Department arrived at Curry's residence to execute the search warrant.[1] Officer Charles Mathis knocked on the front door of the house and began announcing the presence of the officers through an electronic bull horn. After knocking and announcing their presence, the officers waited between 15 and 45 seconds before attempting to force open the front door with a battering ram. After several tries,[2] the officers were able to force the door open and enter the residence. There were three people inside the house: Defendants Curry and Favors, and Favors's younger brother Ivan. The officers found crack cocaine and a 9 mm re-volver inside the house. Curry and Favors were arrested and taken into custody.

At the police station, Sgt. Hallenback took Curry to an interview room. When Sgt. Hallenback pulled out a rights form and began to fill it out, Curry stated: "I want my lawyer. Can I have my lawyer present?" Sgt. Hallenback recorded Curry's statement on the form and stood up to take him back to booking. According to Sgt. Hallenback, Curry then blurted out, "The gun is mine." Sgt. Hallenback replied, "Mr. Curry, you just invoked your right to an attorney. We can't talk to you at this point. Once you've asked for an attorney, we're not supposed to talk to you no more." Curry stated that he wanted to talk, so Sgt. Hallenback pulled out a new rights form and began to fill it out. She explained Curry's rights to him. Curry waived his rights and made incriminating statements.[3]

## II. DISCUSSION

### A. Standard of Review

In the context of a denial of a motion to suppress, we review the district court's factual findings for clear error and its conclusions of law de novo. See United States v. Leake, 998 F.2d 1359, 1362 (6th Cir.1993) (reciting this standard of review after a motion to suppress evidence was denied); United States v. Dotson, 49 F.3d 227, 229 (6th Cir.1995) (reciting the same standard of review for a motion to suppress statements).

---

1. There was conflicting testimony as to the time at which the warrant was executed. Lieutenant Mike Siler testified that the officers arrived at Curry's residence at approximately 7:00 a.m. Sgt. Hallenback testified that the warrant was executed at approximately 8:10 or 8:15 a.m.

2. The door was apparently barricaded from the inside.

3. Defendant Favors also waived her Miranda rights and made incriminating statements to Sgt. Hallenback. However, she has not appealed the district court's denial of her motion to suppress these statements.

## B. Analysis

When reviewing a state magistrate's determination of probable cause in issuing a search warrant, we must determine whether, under the totality of the circumstances, the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. *See United States v. Sonagere,* 30 F.3d 51, 53 (6th Cir.1994). Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir.1990). We pay great deference to a magistrate's findings, and we will only reverse the magistrate's decision to grant a search warrant if it was arbitrary. *See Leake,* 998 F.2d at 1363. Nevertheless, the magistrate must not serve merely as a "rubber stamp" for the police. She must perform her neutral and detached function, and therefore our deference to an issuing magistrate is not boundless. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

In the context of affidavits that rely heavily on information from informants, courts consider three factors in determining whether probable cause existed: (1) the basis of the informant's knowledge; (2) the reliability of the informant; and (3) corroborative evidence possessed by the government. *See Leake,* 998 F.2d 1163. These are not requirements that must be satisfied: the strength of one or more of the factors may fairly compensate for a deficiency in another. *See Illinois v. Gates,* 462 U.S. 213, 234, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

The Defendants here argue that the evidence seized during the search of Curry's residence should have been suppressed because the affidavit in support of the warrant was "boilerplate" and con-clusory, and did not provide probable cause for the issuance of the warrant. According to the Defendants, the affidavit contained few specific facts and no independent corroboration by the police of information received from the informant.

We find that the affidavit in this case was sufficient to justify the issuance of the search warrant. Two of the factors from *Leake* are clearly present here. The informant's knowledge was firsthand, based on his frequent and very recent presence inside Curry's house. The affidavit described the informant as reliable, and supports this assertion by explaining that the informant had recently provided Sgt. Hallenback with information leading to cocaine-related arrests and had previously worked with other law enforcement agents investigating drug trafficking. The Defendants do not suggest that any of this information about the informant was incorrect. We believe the informant's reliability was well established in the affidavit.

As for the third factor, the lack of corroboration does not render the affidavit in this case insufficient to support a finding of probable cause. We have held that when the officer knows the informant, and the information alleged is based on the informant's personal observation of criminal activity, corroboration is not necessary. *See United States v. Allen,* 211 F.3d 970 (6th Cir.2000) (en banc). Accordingly, we conclude that the warrant was supported by probable cause.

We also reject the Defendants' argument that the affidavit was "boilerplate." The Defendants rely on *United States v. Weaver,* 99 F.3d 1372 (6th Cir.1996), in which we held that a boilerplate form was insufficient to support a finding of probable cause. In this case, no boilerplate form was submitted. Rather, Sgt. Hallenback submitted a detailed explanation of

the information she had received from the informant and the informant's reliability.

The Defendants also claim that in executing the search warrant, the police violated the "knock and announce" rule. This rule requires that before police execute a search warrant, they identify themselves and indicate that they are present for the purpose of executing a warrant. *See* 18 U.S.C. § 3109. We have held that after giving this required notice, the officers must wait a reasonable period of time before entering the premises. *See United States v. Spikes*, 158 F.3d 913, 925 (6th Cir.1998). Courts have eschewed a rigid requirement that police wait a certain number of seconds or minutes. *See, e.g., Spikes*, 158 F.3d at 925. Instead, we examine all of the circumstances of a particular case to determine whether the officers waited a reasonable period of time. *See id.* We have suggested that when the police are searching for drugs, a shorter wait is reasonable because evidence of drug activity can be hidden or destroyed rather quickly. *See id.*

The Defendants in this case do not claim that the officers failed to knock and announce their presence.[4] Clearly, the officers did both. Rather, the Defendants argue that the officers did not wait a reasonable period of time before entering the house. As the Defendants point out, the warrant was executed early in the morning, at a time when many people are still asleep. Furthermore, there was conflicting testimony as to how long the officers waited after knocking and announcing their presence; estimates ranged from 15 seconds to 45 seconds.

█ We find that the officers waited a reasonable period of time before entering

Curry's residence. Even assuming that they only waited between 15 and 30 seconds, the wait was not unreasonably short. *See United States v. Finch*, 998 F.2d 349 (6th Cir.1993) (holding no violation of knock and announce rule where the officers waited only five to ten seconds before forcing entry); *Spikes,* 158 F.3d at 925 (fifteen to thirty seconds); *United States v. Gatewood,* 60 F.3d 248, 250 (6th Cir. 1995) (ten seconds). After the officers waited, it took them at least a few seconds more to force open the door, which was barricaded from the inside. Furthermore, the officers had come to search for drugs and may have been justifiably concerned that persons inside the house would try to hide or dispose of the cocaine. Finally, because the search warrant here was executed sometime after 7:00 a.m., this case is clearly distinguishable from *Griffin v. United States,* 618 A.2d 114, 121 (D.C. 1992), in which a thirty second wait was declared unreasonable because the warrant was executed at 1:40 a.m. Based on the circumstances of the search and seizure in this case, we find that the officers waited a reasonable amount of time after knocking and announcing their presence before forcing entry.

Defendant Curry argues that the incriminating statements he made to police should have been suppressed because the police failed to honor his request for an attorney. In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court held that once a suspect invokes his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), all interrogation must cease unless the suspect initiates further interrogation. A suspect initiates further

---

4. The Defendants do suggest that no one heard the officers announce their presence using the bullhorn. *See* Appellant Curry's Br. at 16. However, in his statement to Sgt. Hallenback, Curry stated that he "heard the police at the door." J.A. at 123. Similarly, Favors said in her statement that she "heard the police" and woke up. J.A. at 131–32.

questioning when, without influence by the authorities, he shows a willingness and a desire to talk generally about his case. *See United States v. Whaley,* 13 F.3d 963 (6th Cir.1994).

Here, the parties agree that Curry invoked his right to counsel. According to Sgt. Hallenback, Curry quickly changed his mind, blurted out that the gun belonged to him, and said he wanted to talk. The district court credited Sgt. Hallenback's testimony regarding these events, finding that Curry "freely and voluntarily" made incriminating statements "a very short time after initially asking for a lawyer." J.A. at 166. Curry now claims that Sgt. Hallenback's account of the interrogation "is inherently not credible." Appellant Curry's Br. at 18. Curry urges us to find that the police initiated questioning after he invoked his right to counsel.

■ We do not think the district court clearly erred in crediting Sgt. Hallenback's testimony and finding that Curry initiated his interrogation. The district court had an opportunity to observe Sgt. Hallenback's demeanor and found her testimony regarding the interrogation credible. Curry does not dispute that Sgt. Hallenback read the *Miranda* warnings to him a second time. Nor does he dispute that he acknowledged his understanding of each of the rights and signed a form waiving them. Based on these factors, the district court properly concluded that Curry had initiated his interrogation.

### III. CONCLUSION

For these reasons, we AFFIRM the Defendants' convictions.