**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Marcus Dion HURT, Defendant–
Appellant.**

**No. 02–6377.**

United States Court of Appeals,
Sixth Circuit.

March 30, 2004.

Victor L. Ivy, Asst. U.S. Attorney, U.S. Attorney's Office, Jackson, TN, for Plaintiff–Appellee.

Stephen B. Shankman, Fed. Public Defender, M. Dianne Smothers, Asst. FP Defender, Office of the Federal Public Defender for the Western District of Tennessee, Memphis, TN, for Defendant–Appellant.

Before BATCHELDER, GIBBONS, and COOK, Circuit Judges.

GIBBONS, Circuit Judge.

Defendant-appellant Marcus Hurt appeals the district court's denial of his motion to suppress evidence seized by Jackson, Tennessee police during a search of his residence. After the court denied Hurt's motion, he entered a conditional guilty plea and was convicted and sentenced for possession with intent to distribute approximately 16.8 grams of cocaine base. For the reasons set forth below, we affirm the district court's denial of Hurt's motion to suppress as well as the judgment of conviction.

### I.

Tyreece Miller, a police officer with the Jackson police department assigned to the metro narcotics unit, received information from a confidential informant that a man named Mark was selling crack cocaine. The informant, who had made several controlled narcotics purchases for Officer Miller in the past, told him that Mark sold narcotics out of a home at 266 Highview Street in Jackson. On February 20, 2002, Miller wired the informant with an audio transmitter and conducted visual surveillance while the informant entered the home on Highview and purchased crack cocaine. On February 23, 2002, Officer Miller obtained a search warrant from a state circuit court judge for the house at 266 Highview Street.

At approximately 2:35 p.m. on February 26, 2002, Officer Miller and five other Jackson police officers executed the warrant. When the officers arrived at 266 Highview Street, Investigator Mark By-

rum was the first officer out of the van. According to Officer Miller's testimony at the suppression hearing, Investigator Byrum "did a light jog" up to front door of the residence, where he "banged [on the door] using his fist" and yelled. "Police! Search Warrant!" loud enough for anyone in the house to hear him. Miller also testified that he heard movement "like a scurrying sound" in the residence and that it did not sound like anyone was coming to the front door. Sergeant Hardaway checked to see if the front door was locked, and, finding it locked, he rammed the door. Officer Miller testified that Sergeant Hardaway hit the door "about ten to twelve seconds" after Investigator Byrum performed the knock and announce.

Investigator Byrum was the first officer to enter the house. Once inside the house, the officers again yelled, "Police! Search Warrant!" The officers found Hurt and Theresa Owens in a bedroom, located approximately fifteen or twenty feet from the front door in the southwest corner of the house. Owens testified that she "had just laid down to take a little nap" in the bedroom when she heard noise. She got up to see what was causing the noise and saw officers running into the residence. The officers then performed a protective sweep of the house and found crack cocaine, marijuana, scales, a weapon, rolling paper, a police scanner, and money.

On April 15, 2002, Hurt was indicted in the United States District Court for the Western District of Tennessee. He was charged with possession with intent to distribute approximately 16.8 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1).[1] On July 12, 2002, Hurt filed a motion to suppress all evidence seized from the search of 266 Highview Street. He argued that the officers' entry into his home violated the Fourth Amendment because the officers did not conform to the knock and announce rule.[2] After holding a hearing on Hurt's motion to suppress, the district court denied the motion. On July 23, 2002, Hurt pleaded guilty to the charge of cocaine base possession but reserved his right under Federal Rule of Criminal Procedure 11 to appeal the district court's ruling regarding his motion to suppress. Hurt was then sentenced to sixty-seven months in prison, four years of supervised release, and a $100 special assessment. Hurt filed a timely notice of appeal of the district court's judgment.

## II.

Hurt appeals the district court's denial of his motion to suppress evidence seized from his residence by the officers who executed the search warrant. He contends that the district court—in determining whether the officers' entry comported with constitutional requirements—improperly considered Officer Miller's testimony about hearing scurrying noises inside of Hurt's home. According to Hurt, the evidence taken by the officers was seized in violation of the Fourth Amendment because the officers did not comply with the knock and announce rule. Specifically, Hurt claims that the officers violated the knock and announce rule when they did not wait a reasonable amount of time after knocking and announcing their presence before entering his house.

1. Hurt's indictment also charged him with possession of a Fabico .32 caliber revolver, in violation of 18 U.S.C. § 924(c). The government eventually dismissed this charge.

2. Hurt also argued that probable cause did not exist for the issuance of the search warrant of his home. The district court found that probable cause existed, and Hurt does not raise this issue again on appeal.

We review the district court's findings of fact in a suppression hearing for clear error, while its conclusions of law are reviewed *de novo. United States v. Avery,* 137 F.3d 343, 348 (6th Cir.1997). Because we review the district court's findings of fact for clear error, the court's "factual findings will be overturned only if the reviewing court has the 'definite and firm conviction that a mistake has been committed.'" *United States v. Pinson,* 321 F.3d 558, 562 (6th Cir.2003) (quoting *United States v. Worley,* 193 F.3d 380, 384 (6th Cir.1999)).

The knock and announce rule "forms a part of the reasonableness inquiry under the Fourth Amendment."[3] *Wilson v. Arkansas,* 514 U.S. 927, 929, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). This court has articulated the knock and announce rule as follows:

> [Before the police execute a warrant] they must identify themselves as police and indicate that they are present for the purpose of executing a search warrant.... Once having given the required notice, the officer must wait a reasonable period of time before he may break and enter into the premises to be searched.

*United States v. Spikes,* 158 F.3d 913, 925 (6th Cir.1998) (alterations in original). As a result of the rule, "[a]bsent certain exigent circumstances, it is unreasonable under the Fourth Amendment for an officer to enter a dwelling without first knocking and announcing his presence and authority." *United States v. Dice,* 200 F.3d 978, 982 (6th Cir.2000). This court has refused to refused to adopt a *per se* rule for the

length of time officers must wait to enter a home after announcing their presence. *United States v. Pennington,* 328 F.3d 215, 220 (6th Cir.2003); *see also Spikes,* 158 F.3d at 926 ("The Fourth Amendment's 'knock and announce' principle, given its fact-sensitive nature, cannot be distilled into a constitutional stop-watch where a fraction of a second assumes controlling significance."). Rather, to determine whether officers complied with the knock and announce rule, we consider the facts and circumstances of each individual case in order to decide if officers waited a reasonable amount of time before forcing their way into a residence. *See Pinson,* 321 F.3d at 566.

In arguing that officers violated the knock and announce rule, Hurt contends that the district court's finding that Officer Miller heard scurrying inside his house is clearly erroneous. He asserts that Officer Miller's testimony about scurrying is absurd, given that the occupants of the house were lying in bed shortly before the officers entered. Hurt also claims that Miller would have communicated information about such scurrying to his fellow officers at the scene. Alternatively, Hurt argues that, because Officer Miller did not communicate this information to the other police officers at the scene, the police cannot rely on hearing scurrying sounds to justify their entry into the residence.

■ With respect to Hurt's first argument, the district court's finding that Officer Miller heard scurrying inside Hurt's house at the time of the execution of the search warrant was not clearly erroneous. Miller's testimony in and of itself was suf-

---

**3.** Because this case involves the execution of a state search warrant that was executed by state officials, we do not need to consider the codification of the knock and announce rule at 18 U.S.C. § 3109. *See United States v. Gatewood,* 60 F.3d 248, 249 (6th Cir.1995)

(noting that 18 U.S.C. § 3109 regulates only federal officers and does not apply when state officers, acting without federal involvement, seize evidence that is later offered in a federal prosecution).

ficient to support this finding. Moreover, Owens, the only occupant of the home besides Hurt at the time the officers entered, testified that after she "heard some noise," she got up to see what the noise was. This activity could have constituted the scurrying that Officer Miller testified to hearing. Owens also conceded that Officer Miller may have heard a dog moving in the house. Therefore, the district court's conclusion that Officer Miller heard scurrying does not impress upon us the "definite and firm conviction that a mistake has been committed."

■ We also reject Hurt's argument that, because Miller did not tell the other officers executing the search warrant about the scurrying noise, the entry into Hurt's home was unreasonable. Even if Hurt is correct that only Officer Miller heard and relied on the scurrying sounds, this fact can nonetheless be considered in determining whether the officers' entry was reasonable. *See, e.g., Pennington*, 328 F.3d at 221 (noting that the testimony of the knocking officer that he heard footsteps inside a home supported a finding that officers' entry into the home was reasonable, even though six to seven Memphis police officers were present to execute the search warrant).

■ In addition, there are several other factors that indicate the officers' conduct in this case was reasonable. First, the officers were searching Hurt's home for drugs after a confidential informant had made a controlled purchase of crack cocaine at that location. We have noted that "the presence of drugs in the place to be searched, while not a conclusive factor, lessens the length of time law enforcement must ordinarily wait outside before entering a residence." *Spikes*, 158 F.3d at 926; *see also United States v. Johnson*, No. 98–3183, 2000 WL 712385, at *5 (6th Cir. May 24, 2000) (upholding officers' five second

wait between announcing their presence and entering a home when a controlled buy of drugs had occurred at the home the prior day in part because police could "reasonably assume persons with access to working plumbing facilities will try to destroy this [drug] evidence").

Second, the police executed the search warrant at Hurt's house in the middle of the day. As this court explained in *Spikes*,

[t]he amount of time officers need to wait before entering a home necessarily depends on how much time it would take for a person in the house to open the door. When the police execute a warrant in the dead of night or have some other reason to believe that a prompt response from the homeowner would be unlikely, the length of time the officers should wait increases.... Correspondingly, when officers execute a warrant in the middle of the day or have requested admittance from the occupant face-to-face, the length of time the officers must tarry outside diminishes.

158 F.3d at 927. In the instant case, the officers executed the warrant at 2:35 p.m., and the record contains no indication, nor has Hurt argued, that the officers should have believed that "a prompt response from the homeowner would be unlikely." *Id.; see also Pinson*, 321 F.3d at 567 (finding that "when officers executed the warrant at 3:05 p.m., it was reasonable to assume that someone would have been awake and responsive").

Therefore, given that Officer Miller heard a scurrying sound inside of Hurt's house after the police announced their presence, that there were drugs in the place to be searched, and that the warrant was executed in the middle of the day, we conclude that the time between the officers' "knock and announce" and their entry into Hurt's residence satisfied the rea-

sonableness requirement of the Fourth Amendment.

## III.

Based upon the foregoing reasons, we affirm the decision of the district court to deny Hurt's motion to suppress and Hurt's conviction.