RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0064P (6th Cir.)
File Name: 03a0064p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

GARY DEWAYNE PINSON,
  *Defendant-Appellant.*

No. 01-6133

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 00-00151—Robert L. Echols, Chief District Judge.

Argued: February 4, 2003

Decided and Filed: February 27, 2003

Before: GILMAN and GIBBONS, Circuit Judges;
POLSTER, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Sumter L. Camp, FEDERAL PUBLIC
DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant.
Anna Johnson Cramer, ASSISTANT UNITED STATES

---

[*] The Honorable Dan Aaron Polster, United States District Judge for
the Northern District of Ohio, sitting by designation.

1

ATTORNEY, Nashville, Tennessee, for Appellee.
**ON BRIEF:** Sumter L. Camp, FEDERAL PUBLIC
DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant.
Debra Teufel Phillips, ASSISTANT UNITED STATES
ATTORNEY, Nashville, Tennessee, for Appellee.

POLSTER, D. J., delivered the opinion of the court, in
which GIBBONS, J., joined. GILMAN, J. (pp. 17-18),
delivered a separate concurring opinion.

———————————

**OPINION**

———————————

DAN AARON POLSTER, District Judge. Defendant-
Appellant, Gary DeWayne Pinson, pled guilty to violations of
18 U.S.C. § 922(g)(1) [felon in possession of a firearm];
21 U.S.C. § 841 [possession with intent to sell cocaine in
excess of 100 grams and cocaine base in excess of 50 grams];
and 18 U.S.C. § 924 (c) [carrying or using a firearm during
a drug trafficking crime]. Pinson reserved his right to appeal
the district court's order denying his motion to suppress
evidence on the basis that the search warrant was not
supported by probable cause and, even if it was, the officers
violated the knock-and-announce provisions of the Fourth
Amendment to the United States Constitution. For the
reasons set forth below, we **AFFIRM** the district court's
order denying Pinson's motion to suppress the evidence.

## I.  BACKGROUND

**A.  Factual background**

On August 19, 1999, Nashville Police Officer William
Mackall appeared before a Davidson County General
Sessions magistrate judge to apply for the issuance of a search
warrant to allow him to search 2713 Torbett Street in
Nashville, Tennessee. Officer Mackall provided the
magistrate judge with an affidavit in support of his application

suppression of evidence and the demise of a prosecution." (Lead Op. at 11)  *See Weaver*, 99 F.3d at 1378 ("In determining whether an affidavit is 'bare bones,' the reviewing court is concerned exclusively with the statements contained within the affidavit itself."). I personally believe that the affidavit in the present case was insufficient to establish probable cause, but recognize that the majority in *Allen* found to the contrary based upon a substantially similar affidavit. Therefore, I reluctantly concur on this issue.

As to the knock-and-announce issue, I must say that this case is as "close to the line" as any I have seen. The lead opinion quite properly emphasizes that "[w]e need not decide whether a wait of five to ten seconds, standing alone, is adequate under the knock and announce rule" (Lead Op. at 12), and that, "[m]ore importantly, a number of events occurred prior to the first knock that should have alerted the occupants of 2713 Torbett Street that the police would be seeking entry to the premises." (Lead Op. at 15)  Without these prior events, I would have found that the police officers had violated the knock-and-announce rule.  This case, therefore, should not be cited for the general proposition that five seconds is a sufficient time for police officers to wait before forcing their way into a residence.

for the search warrant. The affidavit in support of the search warrant read as follows:

> This affidavit is made by Officer William Mackall who has 6 years of law enforcement experience as a sworn police officer and 4 years as a narcotics investigator, now testifies herein which is based upon information received from other law enforcement officers, unless otherwise stated, which your affiant believes to be true, and is as follows. Within the last 72 hours your affiant searched a reliable confidential informant hereafter referred to as "CI" and found no illegal contraband and directed said CI to go to stated address and purchase a quantity of cocaine which said CI did.  Your affiant gave said CI some pre-photo copied buy money and observed said CI enter through the front door of stated address and momentarily returned through the same door.  Said CI then walked directly back to my vehicle turning over a large yellowish rock that later field tested positive for cocaine base.  Said CI is familiar with said drug from past experience and exposure.  Your affiant knows said CI is reliable from past information received from said CI resulting in the lawful recovery of narcotics.  Your affiant will only give said CI's name to the judge signing this warrant.  The CI wishes to remain anonymous for fear of reprisal.  Your affiant wishes to search each person(s) on the above premises[.]  From your Affiant's experience and training, he has learned that most persons present at premises; where controlled substances are bought, sold and/or used, have controlled substances, paraphernalia, weapons or other evidence of criminal conduct secreted on their person.

In executing the warrant, Officer Mackall and other police officers pulled up in front of the residence in an unmarked van and got out of the vehicle. Officer Mackall believed there was also a marked police car present.  From the sidewalk,

where the officers got out of the van, to the front porch is ten to fifteen feet. As they approached the front door of the residence they noticed a woman on the front porch. They yelled, "Get on the ground, get on the ground, get on the ground;" the woman complied and was handcuffed.

Once at the front door, the officers knocked on the door and announced "Police, search warrant." The confidential informant had told Officer Mackall that in order to purchase drugs at the residence, one needed to call before arriving because the residents would not respond to a knock on the door. The officers waited five to ten seconds before battering down the front metal security door with a ram. The officers also battered down an inner door. Upon entering the living room of the house, the officers discovered two women by a couch. Pinson was standing to the right of the officers in the doorway of a bedroom. The search of the house yielded a large quantity of crack and powder cocaine, Dilaudid and Valium pills, marijuana, scales, and several guns.

## B. Procedural background

On August 23, 1999, Pinson was indicted and charged with (1) felony possession of firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(a); (2) possession with intent to distribute schedule II controlled substances in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (3) possession of firearms in furtherance of a drug trafficking crime in violation Sof 18 U.S.C. §§ 2 and 924(c)(1); (4) possession of a destructive device in furtherance of a drug trafficking crime in violation of 18 U.S.C. §§ 2 and 924(c)(1); and (5) knowing receipt and possession of a destructive device which was not registered to him in violation of 26 U.S.C. § 5861(d).

In a motion filed on March 26, 2000, Pinson moved to suppress the evidence as illegally seized, alleging that the search warrant was not based on probable cause and, even if it was, the agents and officers violated the "knock and announce" rule of the Fourth Amendment to the United States Constitution when effectuating the warrant. On April 27, 2001, an evidentiary hearing was held. At the close of the

---

## CONCURRENCE

---

RONALD LEE GILMAN, Circuit Judge, concurring. I concur in the well-written lead opinion, both as to the validity of the search warrant and the officers' compliance with the knock-and-announce rule. My concurrence on the search-warrant issue, however, is a reluctant one, compelled by this court's controlling precedent in *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000) (en banc). But for *Allen*, I would hold that Officer Mackall's affidavit was legally insufficient to support the magistrate judge's conclusion that there was probable cause to believe that evidence of a crime would be found at Pinson's residence. The affidavit simply documents that the confidential informant purchased a single rock of crack cocaine while at 2713 Torbett Street. It leaves out the key piece of information that the informant had observed large quantities of drugs, money, and weapons when he was in the residence. Without this additional information, I do not believe that the magistrate judge had a reasonable basis to conclude that the police would find contraband in the residence three days after the single rock of crack cocaine had been purchased by the informant. *See Allen*, 211 F.3d at 977 (Gilman, J., concurring); *see also United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996) (holding that the affidavit submitted for a warrant did not support the magistrate's determination of probable cause where "the only claim of possible wrongdoing is the averment that, within three days prior to the affidavit date, the informant was on the suspect premises and, while there, he saw some quantity of marijuana 'expressly for the purpose of unlawful distribution'").

The fact that Officer Mackall had this additional information does not save the deficient affidavit. As well put by the lead opinion, "a probable cause determination can be based only upon the information the law enforcement officer communicates to the magistrate judge, and . . . the omission of relevant information from an affidavit could lead to the

Officer Mackall testified that when the officers entered the front door two female subjects were over by the living room couch and Pinson was standing right in the doorway of the bedroom and the living room, where the officers could literally reach out and touch him. The district court correctly noted that the chance is slim that those inside had not heard and had an opportunity to respond to the officers' requests for entry.

The Fourth Amendment questions only whether the officers' overall actions were reasonable, not how much time officers must wait to infer a constructive refusal of admittance. *United States v. Jones*, 133 F.3d 358, 361 (5th Cir. 1998). Given the testimony of the officers found credible by the district court, the  time of day when the officers executed the warrant, the commotion on the porch, and the knowledge that the residents would not respond to a knock on the door unless they received a telephone call first, we conclude that the time which elapsed between the announcement and entry was sufficient under the circumstances to satisfy the reasonableness requirement of the Fourth Amendment.

### III.  CONCLUSION

For the forgoing reasons, we **AFFIRM** the district court's denial of the motion to suppress.

hearing, Pinson sought and obtained permission from the court to file a supplemental memorandum in support of his Motion to Suppress. On May 3, 2001, Pinson filed the memorandum and the government responded on the following day. The district court entered an order and memorandum denying the motion.

On May 21, 2001, Pinson entered pleas of guilty to Counts One, Two, and Three of the indictment, reserving for appeal the issues raised in the suppression motion. On August 13, 2001, Pinson was sentenced to a total sentence on the three counts of one hundred and eighty-one (181) months' imprisonment; the judgment was entered on September 4, 2001. On September 10, 2001, Pinson's notice of appeal was timely filed.

### II.  ANALYSIS

#### A.  Standard of review

In reviewing a motion to suppress, we must review factual findings for clear error and review legal determinations *de novo*. *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000), *cert. denied*, *Williams v. United States*, 531 U.S. 1095 (2001); *United States v. Williams*, 962 F.2d 1218, 1221 (6th Cir. 1992). The district court's factual findings will be overturned only if the reviewing court has the "definite and firm conviction that a mistake has been committed." *United States v. Worley*, 193 F.3d 380, 384 (6th Cir. 1999).

#### B.  Search and Seizure

The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly

describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

The warrant requirement exists to measure the probable cause asserted and to ensure that "those searches deemed necessary should be as limited as possible." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). A magistrate judge's determination of probable cause is given great deference by a reviewing court. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir.) (en banc) *cert. denied*, *Allen v. United States*, 531 U.S. 907 (2000). Affidavits must be judged based on the "totality of the circumstances" and answer "the commonsense, practical question [of] whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Illinois v. Gates*, 462 U.S. 213, 230 (1983). In *United States v. Leon*, 468 U.S. 897, 915 (1984) (internal citations omitted), the Supreme Court said:

> Even if the warrant application was supported by more than a 'bare bones' affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances, or because the form of the warrant was improper in some respect.

This court explained that "[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *Allen*, 211 F.3d at 975. In order to be adequate, Officer Mackall's affidavit had to contain his attestation, in some detail, of the reliability of the confidential informant and evidence sufficient to provide a basis for the magistrate judge's conclusion that it was probable that evidence of a crime would be found at 2713 Torbett Street.

Pinson contends that the affidavit underlying the search warrant failed to show probable cause. Specifically, Pinson

most people are in bed, and many are asleep'). Correspondingly, when officers execute a warrant in the middle of the day or have requested admittance from the occupant face-to-face, the length of time the officers must tarry outside diminishes. *See United States v. Kemp*, 12 F.3d 1140 (D.C. Cir. 1994).

*Spikes*, 158 F.3d at 927. In the instant case, when officers executed the warrant at 3:05 p.m., it was reasonable to assume that someone would have been awake and responsive. Officer Mackall corroborated this assumption when he testified that when the officers entered the front door, two female subjects were on the living room couch and Pinson was standing right in the doorway where the officer could reach out and touch him.

More importantly, a number of events occurred prior to the first knock that should have alerted the occupants of 2713 Torbett Street that the police would be seeking entry to the premises. *Spikes*, 158 F.3d at 925. The undisputed testimony is that in the middle of the day some of the officers arrived in an unmarked van while others arrived in a marked patrol car with its blue lights on. As the officers approached the residence there was a female on the front porch; the officers yelled, "Get on the ground, get on the ground, get on the ground." At the time the officers yelled to the female, they were between ten to fifteen feet away from the porch. After the officers secured the female, they approached the front security door. Officer Mackall had been told by the confidential informant that in order to purchase drugs at the residence, one needed to call before arriving because the residents would not respond to a knock on the door. At the front wrought iron security door, the officers knocked and announced, "Police, search warrant." When no one came to the door, the officers waited between five and ten seconds before breaching the outer security door with a ram. During this time, there were at least four officers that continued yelling, "Police, search warrant, do not resist." The officers again used the ram to smash an inner door of the residence.

quantities of drugs, might be disposed of. *Bates*, 84 F.3d at 795 ("officers must have more than a mere hunch or suspicion before an exigency can excuse the necessity for knocking and announcing"); *United States v. Johnson*, 267 F.3d 498, 501 (6th Cir. 2001) ("boilerplate language concerning the possible destruction of evidence would not be sufficient").

Knowledge by law enforcement officers that the occupants of the premises are armed and dangerous can be an important factor. This court has explained, "The presence of a weapon creates an exigent circumstance, provided the government is able to prove they possessed information that the suspect was armed and likely to use a weapon or become violent . . . [e]vidence that firearms are within a residence, by itself, is not sufficient to create an exigency to officers when executing a warrant." *Bates*, 84 F.3d at 795 (internal citations omitted). Pinson correctly argues that there is no evidence in the record that the officers anticipated that any defensive measures had been taken by Pinson or others in the residence. Nor does Officer Mackall say that Pinson had a history for violence or that he had been informed that Pinson would use any weapons to defend the residence. *See Spikes*, 158 F.3d at 926; *Bates*, 84 F.3d at 795.

However, when analyzing whether the officers' overall actions were reasonable, this court has emphasized that the time of day when executing a search warrant is critical in establishing reasonableness. This court explained:

> The amount of time officers need to wait before entering a home necessarily depends on how much time it would take for a person in the house to open the door. When the police execute a warrant in the dead of night or have some other reason to believe that a prompt response from the homeowner would be unlikely, the length of time the officers should wait increases. *See Griffin v. United States*, 618 A.2d 114, 121 (D.C.App.1992) (entering a person's home after a thirty second wait at 1:40 a.m. was held to be unreasonable because 'at that time of night,

argues that the affidavit was a "bare bones" affidavit, lacking information about the confidential informant and his reliability, lacking information on the "buy" by the confidential informant, and lacking evidence that ongoing drug trafficking was taking place in the residence.

As support for his insufficiency argument, Pinson cites the *en banc* decision in *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000), and *United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1996). Pinson argues that the *Allen* affidavit contained more information about the informant than the affidavit in this case. To the contrary, there is a stronger showing of reliability for the confidential informant in the instant case than there was in *Allen*. In both cases, the officers personally knew the confidential informant, named the confidential informant only to the magistrate judge, and characterized the informant as reliable. The *Allen* affidavit recited that the officer knew the informant for five years. Here, while Officer Mackall did not state now long he has known the confidential informant, he did state that he "knows said CI is reliable from past information received from said CI." Unlike *Allen*, where the magistrate judge had no way of determining the type of criminal activity with which the informant was familiar, the magistrate judge in this case knew exactly the type of criminal activity the confidential informant had experienced. The affidavit stated that the confidential informant was familiar with cocaine from "past experience and exposure" and that he had provided information to the police in the past which resulted "in the lawful recovery of narcotics." Furthermore, the confidential informant's basis of knowledge of the criminal activity was that he had personally purchased cocaine at 2713 Torbett Street. Unlike *Allen*, where there was no corroboration of the informant's purchase of drugs, the affidavit in this case contained Officer Mackall's personal observation, his pat down of the informant before and after the purchase of the narcotics, and the fact that the drugs purchased by the confidential informant were later tested positive for cocaine base. All of this information was clearly stated in the affidavit, and the affidavit meets the *Allen* test. In *Allen*, this court held "[w]here a known person, named to

the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, a neutral and detached magistrate *may* believe that evidence of a crime will be found." 211 F.3d at 976. This court continued, "There is, of course, no *guarantee* that the evidence will still be there, but the magistrate may determine that such a probability exists. This holding requires evidence sufficient to provide a basis for that judgment." *Id.* However, certainty is not required and a magistrate judge's determination of probable cause is given great deference by a reviewing court. *Id.* at 973, 975.

Pinson next argues that there was no substantial basis in the affidavit to conclude that evidence of the crime was linked to the premises to be searched. However, Pinson's reliance on *United States v. Savoca*, 739 F.2d 220, 224 (6th Cir. 1984), *result vacated*, 761 F.2d 292 (6th Cir. 1985),[1] *United States v. Lockett*, 674 F.2d 843 (11th Cir. 1982), *United States v. Gramlich*, 551 F.2d 1359 (5th Cir.), *cert. denied,* 434 U.S. 866 (1977), and *United States v. Flanagan*, 423 F.2d 745, 747 (5th Cir. 1970) is misplaced.

In *United States v. Lockett*, the court held that the affidavit did not support a showing of probable cause because there was a missing link, i.e. that the dynamite was being stored at Lockett's residence. 674 F.2d at 846-47. Likewise, in *United States v. Flanagan*, the court found that there was nothing in the affidavit to connect the items burglarized in Houston to Flanagan's Fort Worth residence. 423 F.2d at 746-47. In *United States v. Gramlich*, the court concluded that there was no probable cause because the affidavit did not mention any activity that connected the defendant's residence to the smuggling of contraband that occurred fifty miles away. 551

---

[1] This court granted the government's petition for rehearing to consider the application of *United States v. Leon*, 468 U.S. 897 (1984), to the facts of that case. While the application of *Leon* changed the outcome of the case by reversing the panel's original decision to grant the motion to suppress, it did not change the panel's original conclusion that the search warrant affidavit failed to establish probable cause.

or whether the police rang the doorbell, "but rather on how these words and other actions of the police will be perceived by the occupant." *Id.* at 925 (citation omitted). "The proper trigger point, therefore, is when those inside should have been alerted that the police wanted entry to execute a warrant." *Id.* The fact-specific inquiry needed to determine the reasonableness of the interim between announcement and entry mandates consideration of a number of factors, including the object of the search, possible defensive measures taken by residents of the dwelling to be searched, time of day, and method of announcement. *Id.* at 926-27.

While the courts have not established a minimum time that officers must wait there is substantial precedent for the proposition that a wait of no more than fifteen seconds between announcement and entry may be sufficient when a drug search warrant is executed, given the ease with which narcotics evidence can be destroyed. *Spikes*, 158 F.3d at 925-27 (holding fifteen to thirty seconds sufficient); *United States v. Gatewood*, 60 F.3d 248, 250 (6th Cir.), *cert. denied*, 516 U.S. 1001 (1995) (ten to twenty seconds sufficient). As a basis for its argument that this court upheld a wait of only five seconds, the government cites *United States v. Johnson*, No. 98-3183, 2000 WL 712385 (6th Cir. May 24, 2000) (unpublished opinion). This court in *Johnson* held that a search was valid even though there was only a five-second wait between knocking and entering when the officer knew that drugs were present as the result of a controlled delivery. 2000 WL 712385, at *4-5. The drugs were prepackaged in small quantities; therefore, the court reasoned that the officers "can reasonably assume persons with access to working plumbing facilities will try to destroy this evidence." *Id.* at *5 (citing *Spikes*, 158 F.3d at 926). In the instant case, a confidential informant had made a controlled buy of cocaine and had observed "large quantities of drugs." Generally, the presence of drugs lessens the time officers must wait before entering a residence after announcing their presence. *Spikes*, 158 F.3d at 926. However, Pinson correctly argues, there is no testimony in this case concerning the officers' belief as to the ease with which the object of their search, the large

1990).[2]    The knock and announce rule: 1) reduces the potential for violence to both the police officers and the occupants of the house into which entry is sought; 2) curbs the needless destruction of private property; and 3) protects the individual's right to privacy in his or her own house. *United States v. Bates*, 84 F.3d 790, 794 (6th Cir. 1996). The knock and announce rule "forms a part of the reasonableness inquiry under the Fourth Amendment." *Wilson v. Arkansas*, 514 U.S. 927, 929 (1995). This court has emphasized that police must wait a reasonable period of time before "physically forcing their way into a residence." *United States v. Dice*, 200 F.3d 978, 983 (6th Cir. 2000) (citing *United States v. Finch*, 998 F.2d 349, 354 (6th Cir. 1993)). Failure to knock and announce prior to forcibly entering a location to execute a search warrant, absent exigent circumstances, is unreasonable under the Fourth Amendment. *Dice*, 200 F.3d at 982. To determine whether officers had complied with the knock and announce rule requires the court to analyze the facts and circumstances on a case-by-case basis. *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997).

In the instant case, Officer Mackall testified that the officers, who executed the search warrant, waited about five to ten seconds between announcing their entry and forcing entry. Pinson admits that the officers knocked and announced their presence and authority, but he argues that they did not wait a reasonable length of time before entering.

We need not decide whether a wait of five to ten seconds, standing alone, is adequate under the knock and announce rule, because the Fourth Amendment dictates only that the officers' overall actions be reasonable, not that they wait a prescribed length of time before forcible entry. *Spikes*, 158 F.3d at 925-26. The focus of the "knock and announce" rule "is properly not on what 'magic words' are spoken by police,"

---

[2]Since this case involves a state warrant executed by state law enforcement, we need not consider the codification of the knock and announce rule in 18 U.S.C. § 3109. *See United States v. Gatewood*, 60 F.3d 248, 249 (6th Cir. 1995).

F.2d at 1362. In *United States v. Savoca*, this court held that the affidavit did not establish probable cause to believe that a motel room located 2,000 miles away from a bank robbery would conceal "fruits and instrumentalities" of the robbery. 739 F.2d at 225. In the case at bar, the affidavit describes how within the past 72 hours Officer Mackall sent the confidential informant with pre-photocopied buy money, observed the confidential informant enter and exit 2713 Torbett Street, and recovered the drugs that the confidential informant purchased in the residence. Obviously, this factual evidence links the sale of illegal drugs to the searched premises at 2713 Torbett Street.

Pinson argues that the affidavit lacks the name or a description of the person from whom the confidential informant purchased the drugs. As a basis for this argument, Pinson cites *United States v. Allen*, discussed *supra*, and *United States v. Campbell,* 256 F.3d 381 (6th Cir. 2001). In *Allen*, the affidavit recited that the informant observed that "John Doe (alias) Red Dog" residing at 910 North Market Street was in possession of cocaine. 211 F.3d at 971. In *Campbell*, the affidavit indicated that within the past 24 hours a controlled purchase of a .38-caliber handgun had been made from the suspect of the search at the specified address. 256 F.3d at 386-87. Neither case, however, suggests that the name or a description of a person is required to establish probable cause for a search warrant. Pinson also contends that the affidavit lacks information on the owner of the property. The Supreme Court has stated that "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978).

> [W]hile probable cause for arrest requires information justifying a reasonable belief that a crime has been committed and that a particular person committed it, a search warrant may be issued on a complaint which does not identify any

particular person as the likely offender. Because the complaint for a search warrant is not 'filed as the basis of a criminal prosecution,' it need not identify the person in charge of the premises or name the person in possession or any other person as the offender.

*Id.* (citation omitted). Therefore, an affidavit in support of a search warrant does not need to name or describe the person who sold the drugs or name the owner of the property. As the Supreme Court has stated, "[s]earch warrants are not directed at persons; they authorize the search of 'place[s]' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized." *Id.* at 555-56.

Pinson next contends that the warrant was stale at the time it was obtained. This court stated that in determining whether evidence is stale, "the length of time between the events listed in the affidavit and the application of the warrant, while clearly salient, is not controlling." *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998), *cert. denied*, 525 U.S. 1086 (1999). In *Spikes*, this court held that the trial court properly denied the motion to suppress even though some of the events included in the affidavit occurred four years before and the officer had not applied for the warrant until ten days after discovery of drug trafficking paraphernalia in the trash. 158 F.3d at 923. In *United States v. Word*, the court found that probable cause for a search warrant existed despite passage of four months since the last documented drug sale. 806 F.2d 658, 662 (6th Cir. 1986). In *United States v. Finch*, this court held that a search warrant affidavit was sufficient to establish probable cause even though it was five days before the issuance of the warrant that the informant had seen cocaine being stored and sold. 998 F.2d 349, 352 (6th Cir. 1993). Even if a significant period of time elapsed, it is possible the magistrate judge may infer that "a search would uncover evidence of wrongdoing." *Spikes*, 158 F.3d at 923. Here, the controlled purchase by the confidential informant took place on or about August 16, 1999. On August 19, 1999,

the warrant was issued and executed. It is reasonable that three days after the drug purchase that police would find narcotics, related paraphernalia, and/or the marked money in the residence. Therefore, the warrant was not stale.

In the instant case, Officer Mackall sought authorization to search for evidence of suspected drug trafficking. Officer Mackall testified at the suppression hearing that the confidential informant observed large quantities of drugs and money and weapons in the residence. He did not include this information in his affidavit, even though it would have been highly relevant to the magistrate judge in making a probable cause determination. We emphasize that a probable cause determination can be based only upon the information the law enforcement officer communicates to the magistrate judge, and that the omission of relevant information from an affidavit could lead to the suppression of evidence and the demise of a prosecution. While we conclude that this affidavit passes constitutional muster, the decision would have been simpler had the officer included the confidential informant's observations in his affidavit.

The district court correctly determined, under the standard articulated in the *en banc Allen* decision, that the affidavit in this case provided sufficient facts for the magistrate judge to find, based upon the totality of the circumstances, that there was probable cause for the search. Because we find that the warrant was issued upon probable cause, we need not decide whether the good-faith exception articulated in *United States v. Leon*, 468 U.S. 897 (1984), applies.

### C.  Knock and Announce Rule

Law enforcement officers must knock and announce their presence and authority before entering a residence to execute a warrant. *Miller v. United States*, 357 U.S. 301 (1958); *United States v. Nabors*, 901 F.2d 1351, 1354 (6th Cir.