NOT RECOMMENDED FOR PUBLICATION
File Name: 04a0072n.06
Filed: November 5, 2004

No. 03-4294

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| HENRY CALDWELL, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

**Before: MERRITT, MOORE, and GILMAN, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** Henry Caldwell entered a conditional plea of

guilty to possession of more than 50 grams of cocaine base (crack) with the intent to distribute, and

to possession of a firearm after having been convicted of a felony. Pursuant to Rule 11(a)(2) of the

Federal Rules of Criminal Procedure, Caldwell reserved the right to appeal the decision of the

district court that denied his motion to suppress the evidence.

On appeal, Caldwell argues that (1) the affidavit supporting the search warrant did not

provide probable cause for the search, (2) the district court erred in denying him a *Franks* hearing

or, in the alternative, an *in camera* proceeding to determine the reliability of the information source,

and (3) the district court erred in applying the *Leon* good-faith exception to the present case. For

the reasons set forth below, we **AFFIRM** the judgment of the district court.

-1-

## I. BACKGROUND

In April of 2002, a municipal judge in Akron, Ohio authorized a search of 136 Bachtel Avenue, Akron, Ohio for evidence of drug trafficking. Detective A. Stump, a 22-year veteran of the Akron Police Department, filed an affidavit in support of the application for the search warrant. He explained in the affidavit that, over the course of one week, he had gone to 136 Bachtel Avenue accompanied by an "information source" and that the source had, on two separate occasions, entered the residence and made controlled purchases of crack from Caldwell. According to Stump, the source "observed a large quantity of crack cocaine inside of the premises" during the first purchase and, during the second purchase, "the source observed several assault type firearms inside of the premises."

Officers from the Akron Police Department executed the search warrant and seized a Glock .45 caliber pistol and over 50 grams of crack from the residence in question. Caldwell was present during the search. A grand jury returned a two-count indictment against Caldwell, charging him with (1) being a felon in possession of a firearm, based upon his previous drug trafficking, robbery, and felonious assault convictions, and (2) possessing crack with the intent to distribute.

Caldwell moved to suppress all of the physical evidence seized during the search. After hearing arguments, the district court denied Caldwell's motion. Caldwell then entered a conditional plea of guilty to both counts of the indictment, but reserved his right to appeal the denial of his motion to suppress. The district court entered judgment against Caldwell in September of 2003, sentencing him to 262 months of imprisonment and 10 years of supervised release. This timely appeal followed.

**II. ANALYSIS**

**A.     Standard of review**

We will set aside the factual findings of the district court in denying a motion to suppress only if clearly erroneous, which means that "the factual findings will be overturned only if the reviewing court has the definite and firm conviction that a mistake has been committed." *United States v. Pinson*, 321 F.3d 558, 562 (6th Cir. 2003) (citation and quotation marks omitted). The legal conclusions of the district court, on the other hand, are reviewed de novo. *Id.* When reviewing an affidavit in support of a search warrant, we consider the "totality of the circumstances" and ask the "commonsense, practical question of whether there is probable cause to believe that contraband or evidence is located in a particular place." *Id.* (citations and quotation marks omitted). We also accord great deference to a magistrate judge's determination of probable cause. *Id.*

**B.     The affidavit supporting the search warrant provided probable cause**

According to Caldwell, the affidavit underlying the search warrant failed to show probable cause because the statements made by the information source were not corroborated. Caldwell argues that "this Affidavit is even less than a barebones affidavit in that it only shows the affiant's naked endorsement of what his alleged source supposedly told him." The facts, however, belie Caldwell's argument.

This court has held that "where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, a neutral and detached magistrate *may* believe that evidence of a crime will be

found." *Pinson*, 321 F.3d at 563 (emphasis in original) (*quoting United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (en banc)). In *Pinson*, this court considered the sufficiency of an affidavit similar to the affidavit in the present case. The defendant in *Pinson* pled guilty to various drug trafficking offenses, conditioned upon his right to appeal the district court's denial of his motion to suppress the evidence seized by the police. Pinson argued, like Caldwell, that the affidavit supporting the search warrant was a "bare bones" affidavit lacking evidence of the confidential informant's (CI's) reliability.

This court held that the affidavit in *Pinson* provided probable cause for the search, reasoning that the affiant stated that he knew the CI, named the CI to the magistrate, averred that the CI had provided reliable information in the past, and noted that the CI had personally purchased cocaine from the location at issue in the search warrant. Also significant was the fact that the affidavit related that the officer had personally observed the CI make the controlled purchase, that he had patted down the CI before and after the purchase, and that the substance purchased by the CI tested positive for cocaine. *Id.* at 563.

The facts of *Pinson* are similar in many ways to those in the present case. Detective Stump watched Akron narcotics officers pat-down the source prior to each of the two controlled purchases to ensure that the source was not carrying any drugs or money of his own. On these two occasions, the source, after being provided with money from the Akron Police Department, entered the premises in question and exited shortly thereafter. Detective Stump said that upon the source's return from the premises, "the source delivered to affiant a quantity of cocaine that the source stated was purchased from Henry Lamont Caldwell within the premises with the funds previously

provided." In addition, the source told Detective Stump that the source had observed a large quantity of crack inside the premises during the first controlled purchase and several assault firearms on the premises during the second controlled purchase.

The primary differences between this case and *Pinson* are that (1) the source here does not appear to have been named to the magistrate, and (2) the past reliability of the source is less clear. In *Pinson*, the officer attested to the CI's reliability based upon "past information received from said CI resulting in the lawful recovery of narcotics." *Pinson*, 321 F.3d at 561. Detective Stump's description of the reliability of his source is not as detailed. He averred

> that the information source listed in the previous paragraphs of this affidavit has provided the affiant with information concerning the possession and sale of controlled substances in the Akron, Ohio area, which information has been corroborated by Detective A. Stump. Further, the information source has displayed [] specific knowledge as to the uses, effects and distribution patterns of controlled substances in the Akron, Summit County, Ohio area.

Although the above statement is somewhat less emphatic than in *Pinson* as to the reliability of the source, there is no material difference in their legal effect, especially where the officers in both cases actually witnessed the controlled purchases.

The fact that the informant in this case was not identified to the judge issuing the search warrant, moreover, is not fatal to the establishment of probable cause. *See, e.g.*, *United States v. Davidson*, 936 F.2d 856 (6th Cir. 1991) (finding sufficient probable cause for a warrant even without considering the information provided by an unidentified informant). Here, there was adequate corroboration to counter the fact that the informant was unidentified. As this court has noted, "an affidavit that supplies little information concerning an informant's reliability may support a finding

of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information." *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004).

An affidavit in support of a search warrant must be reviewed "in a commonsense—rather than a hypertechnical—manner," and this court must "consider whether the totality of the circumstances supports a finding of probable cause." *Id.* at 926. Given this standard of review and Detective Stump's eyewitness corroboration of the source's controlled buys, we find no error in the district court's conclusion that the search in question was supported by probable cause, even though the informant was unidentified.

**C.     The district court did not err in denying Caldwell a *Franks* hearing or, in the alternative, an *in camera* proceeding**

Caldwell argues that the district court erred by denying him a *Franks* hearing to verify the source's reliability. A so-called *Franks* hearing is based upon the case of *Franks v. Delaware*, 438 U.S. 154 (1978), which calls for an evidentiary hearing where a defendant raises a substantial question as to whether the affidavit supporting the search warrant contained materially false information. *Id.* at 156.

In an affidavit dated three months before entering his conditional guilty plea, Caldwell denied that he participated in the two controlled drug purchases. He argues that this denial "makes it clear that the likelihood is good" that no information source exists. Alternatively, Caldwell contends that if the source does exist, then Detective Stump must have falsely characterized the information actually provided by the source. Caldwell concludes that the allegations made against

him in the affidavit call the reliability of the affiant and of the source into question, and that either a *Franks* hearing or an *in camera* proceeding should have been conducted.

When a defendant seeks to demonstrate that an affidavit underlying a search warrant contained false information, the defendant must make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included false statements in the affidavit. *United States v. Rodriguez-Suazo,* 346 F.3d 637, 648 (6th Cir. 2003) (citing *Franks*, 438 U.S. at 155-56). "'[I]f the allegedly false statement is necessary to the finding of probable cause,' the court must conduct a hearing on the issue upon the defendant's request." *Id.* (quoting *Franks,* 438 U.S. at 155-56). "The intentionally or recklessly false statement must be made by the affiant [himself], not the non-governmental informant." *Id.*

In *Rodriguez-Suazo*, this court considered an argument identical to Caldwell's. The defendant contended that either the confidential informant whose tip supplied the basis for the search warrant did not exist, or that the affiant—a Detroit police lieutenant—falsified the information about the informant in the affidavit. *Id.* at 647. Rodriguez-Suazo sought to attack the reliability of the CI and the affiant by offering his own affidavit, denying the allegations against him. This court held that Rodriguez-Suazo's affidavit, "even if believed, does not equate to proof that the affiant lied or was recklessly indifferent to the truth." *Id.* at 648. Caldwell similarly failed to make a substantial showing that Detective Stump knowingly and intentionally, or with reckless disregard for the truth, included false statements in the affidavit. The district court was therefore justified in its denial of a *Franks* hearing.

Caldwell also contends, in conjunction with his argument about the *Franks* hearing, that he was entitled to an *in camera* proceeding to verify that the affiant did not simply fabricate the source. He relies upon the following dicta from this court's decision in *United States v. Giacalone*, 853 F.2d 470 (6th Cir. 1988), to support his argument:

> We believe that the trial judge should retain the discretion to determine what type of hearing is necessary, if any, to determine the veracity of the affiant in cases where the defendant has alleged that the affidavit contains false information, but has failed to make a 'substantial preliminary showing' that the *affiant* has lied such as that which would require a *Franks* hearing.

*Id.* at 478 n.1 (emphasis in original).

Caldwell fails to cite any case, however, where a court has allowed some form of an *in camera* proceeding in lieu of a *Franks* hearing under circumstances similar to the present case. We therefore find no error in the district court's denial of an *in camera* proceeding.

**D.      Good faith exception**

Caldwell's final argument is that, if we should determine that the search warrant is invalid, then the good faith exception to the exclusionary rule would not save the warrant. This argument is based upon the case of *United States v. Leon*, 468 U.S. 897, 922 (1984), in which the United States Supreme Court held that evidence obtained pursuant to a search warrant upon which the law enforcement officers who executed the search relied in good faith will not be suppressed, even if the warrant is later found to be invalid. Because we conclude that there was no error in the issuance of the search warrant in question, we have no need to consider this argument.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.