NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0013n.06

Case No. 21-3686

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Jan 06, 2023 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| MARLON GRANT, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: COLE, GIBBONS, and BUSH, Circuit Judges.

JOHN K. BUSH, Circuit Judge. This appeal concerns the validity of warrants issued to search for drug-trafficking records at a residence and storefront rented by Marlon Grant, located at 501 Tiffin Avenue in Sandusky, Ohio. For the search to have complied with the Fourth Amendment, the warrants needed a factual basis showing a nexus between alleged drug dealing and the property such that it was probable that documentation of the illegal activity would be found there. But all the police knew about the property when they obtained the warrant was that Grant, a suspected drug dealer, was the renter and that he had parked his car there on numerous occasions without staying for long. At no point had police observed Grant conduct a drug transaction at that address. Nor had he ever been seen leaving the building immediately before a drug deal or directly returning after the sale was completed. And the police had never seen any drugs or drug paraphernalia on or around the property.

Our case law is clear that a person's status as an alleged drug dealer, standing alone, is not enough to support a warrant to search that person's real property for drugs or drug-related documents or other material. There must be additional supporting evidence of drug activity linked to the property for a search warrant to be valid. That extra proof was lacking in this case. Accordingly, we hold that the district court erred by denying Grant's motion to suppress evidence derived from the search and by holding that the good-faith exception to the exclusionary rule would apply. We REVERSE the district court's denial of Grant's suppression motion, VACATE his conviction, and REMAND for proceedings consistent with this opinion.

## I.

In June 2018, police in Sandusky, Ohio received an anonymous tip that Grant had supplied a "large amount of Cocaine" in that town. Several months later a confidential informant, CS#1, approached the police and offered to purchase fourteen grams of crack cocaine from Grant. Police agreed. So on February 1, 2019, CS#1 placed a monitored phone call to Grant, during which the two had a "drug related conversation." That same day, police watched as Grant drove to 501 Tiffin Avenue from 1001 West Monroe Street, another property he rented. When he arrived at the Tiffin Avenue address, he parked outside the building without entering. He then left the premises on foot. Police later saw him at CS#1's residence. At some point, Grant called CS#1 and told her[1] that he had left crack cocaine in a potato chip bag near the steps of her residence, and that he would collect payment from her later.[2]

The next day, CS#1 went to 1001 West Monroe Street to pay Grant. CS#1 called Grant and he told her to leave the money in a black Ford Windstar parked in the driveway, which she

---

[1] The affidavit identifies CS#1 as he/she for anonymity. For ease of reference, we default to female pronouns.

[2] Subsequent testing confirmed the presence of cocaine in the potato chip bag.

did. Afterward, police saw Grant arrive at 1001 West Monroe Street, enter and exit the black Ford Windstar, and enter the storefront of 1001 West Monroe Street. Later, police saw the same vehicle parked at 501 Tiffin Avenue, and CS#1 told police that Grant confirmed he received the money.

Forty-seven days later, on March 21, 2019, Detective Brotherton applied for warrants to search for drug trafficking records (records warrants) in the storefront and lower apartment of 501 Tiffin Avenue. In his affidavits in support of the warrants, Detective Brotherton included the information recounted above as well as (1) his attestation that he had seen Grant arrive and depart from 501 Tiffin Avenue "numerous" times, staying only for a short time each visit; (2) his conjecture, based on his training and experience, that this behavior suggested narcotics trafficking; and (3) general information about drug trafficking behavior, including drug traffickers' proclivity for keeping records at secondary locations. Detective Brotherton concluded by noting that police had seen one of Grant's vehicles parked at 501 Tiffin Avenue that day, and that the owner of the building confirmed Grant rented the storefront and lower apartment.

A Sandusky Municipal Court judge thought that this information was enough to establish probable cause and issued the records warrants. Police then searched 501 Tiffin Avenue and found a handgun with ammunition as well as suspected crack cocaine and marijuana. Without seizing any of these items, police stopped their search and returned to Sandusky Municipal Court seeking warrants to search for and seize narcotics and contraband at 501 Tiffin Avenue (narcotics warrants). The affidavits in support of these warrants were nearly identical to the affidavits for the records warrants, only the second set included a description of the suspected contraband police had found but not seized during the first search. A judge issued the requested narcotics warrants, and police then seized cocaine, crack-cocaine, marijuana, and firearms from 501 Tiffin Avenue. Police later arrested Grant at 1001 West Monroe Street, and police obtained a final set of narcotics

warrants to search the apartment and storefront of 1001 West Monroe Street. With these warrants, police seized $6,455 in cash and Grant's cell phone.

The second and third searches resulted in Grant's indictment for possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Grant moved to suppress all the evidence seized or derived from any of the issued search warrants, arguing that the records warrants lacked probable cause, and that the narcotics warrants were unlawful fruits of the records warrants. Without holding a hearing, the district court denied the motion, reasoning that the records warrants were supported by probable cause, and the good-faith exception would otherwise apply.

With his motion to suppress denied, Grant pleaded guilty and received a five-year sentence. But he preserved his right to appeal the denial of his motion to suppress, which he now timely appeals.

## II.

Grant's only claim on appeal is that the district court erred in denying his motion to suppress. A finding of probable cause, or a decision to apply the good-faith exception to the exclusionary rule, is a legal conclusion which we review de novo. *United States v. McCoy*, 905 F.3d 409, 415 (6th Cir. 2018); *United States v. Brown*, 732 F.3d 569, 572 (6th Cir. 2013). Because the district court did not hold an evidentiary hearing for Grant's motion to suppress, we owe no deference to its conclusions. *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2013) (citing *Brown*, 732 F.3d at 572)). But we owe great deference toward the issuing judge's initial determination whether, based on the four corners of the affidavit, there was a substantial basis for

finding probable cause. *United States v. Moore*, 999 F.3d 993, 996 (6th Cir. 2021); *see Illinois v. Gates*, 462 U.S. 213, 236 (1983).

The Fourth Amendment protects the "right of people to be secure in their . . . houses, papers, and effects" and requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. Thus, the affidavit supporting a warrant must contain facts that demonstrate "a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) (quoting *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir. 1990)). In other words, there must be a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)). It is not enough for police to suspect that the owner or renter of a property committed a crime. *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005). Rather, there must be "reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Id.* (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)). This connection between the location and the evidence of criminal activity must be "specific and concrete, not 'vague' or 'generalized.'" *Brown*, 828 F.3d at 382 (quoting *Carpenter*, 360 F.3d at 595)).

Whether a search was an unconstitutional intrusion is a fact-intensive inquiry that has defied the creation of bright-line rules. Yet several trends have emerged. In some cases, we have found a sufficient nexus between a residence, an individual, and suspected contraband based on one controlled drug buy. *See, e.g., United States v. Pinson*, 321 F.3d 558, 560–61 (6th Cir. 2003); *United States v. Jackson*, 470 F.3d 299, 303 (6th Cir. 2006); *United States v. Archibald*, 685 F.3d

553, 555 (6th Cir. 2012) (abrogated on other grounds). But we have typically done so only when the drug transaction took place at the location police wanted to search, or when a suspect was seen exiting a building immediately before undertaking a drug deal. *See Pinson*, 321 F.3d at 560–61 (police sent an informant into a residence to purchase drugs and he returned from the residence having purchased drugs); *Jackson*, 470 F.3d at 303 (same); *Archibald*, 685 F.3d at 555 (same); *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011) (a confidential informant saw the suspect exit the side door of the residence and give another person a large quantity of cocaine before returning inside); *United States v. Jones*, 817 F.3d 489, 491 (6th Cir. 2016) (police watched a suspect exit a residence and drive directly to a third location where he sold cocaine to a confidential informant).

In other cases, we have inferred a nexus between a known drug trafficker and a residence when there is strong evidence linking the suspect to the residence, and there is some additional evidence of drug activity at the residence. *Brown*, 828 F.3d at 383; *Jones*, 817 F.3d at 491. No case suggests that a defendant's status as a drug dealer creates a nexus between his residence and drug evidence. *Frazier*, 423 F.3d, at 533. But it is yet unsettled how much additional evidence of drug activity is needed for a nexus to exist. Some cases have said that this inference can be invoked only when there is "overwhelming evidence that the defendants [are] major players in a large, ongoing drug trafficking operation." *Brown*, 828 F.3d, at 383 n.2. But still others have called only for "recent, reliable evidence of drug activity." *McCoy*, 905 F.3d at 418. At a minimum, we have required "facts showing that the residence had been used in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence." *Brown*, 828 F.3d at 383.

Grant asserts that the affidavits supporting the records warrants for 501 Tiffin Avenue do not establish a proper nexus between his alleged drug activity, records of the same, and that address. We agree. Unlike cases where we have found a sufficient connection based on a single controlled buy, the affidavit does not allege that Grant dealt drugs from 501 Tiffin Avenue or that he even entered the building just before or after the controlled buy. *See Ellison*, 632 F.3d, at 348; *Jones*, 817 F.3d at 490; *Pinson*, 321 F.3d at 560–61. The affidavit neither establishes that Grant was a known drug dealer, nor does it provide evidence of "a large, ongoing drug trafficking operation," or "recent, reliable evidence of drug activity." *Brown*, 828 F.3d at 383 n.2; *McCoy*, 905 F.3d at 418. The only controlled buy linking Grant to drug trafficking occurred forty-seven days before police sought the records warrants, and the only arguable tie that the controlled buy had to 501 Tiffin Avenue was that Grant had parked there (though the buy had not occurred there). When the police observed Grant at the Tiffin Avenue address, which they knew he rented, his visits were short. While these visits could perhaps be characterized as suspicious behavior, the observed facts were insufficient under our precedent to provide "reliable evidence connecting [a] known drug dealer's ongoing criminal activity to the residence [501 Tiffin Avenue]." *Brown*, 828 F.3d, at 383; *see McCoy*, 905 F.3d, at 418 n.5. Put simply, Detective Brotherton's affidavits did not establish that police had a reasonable basis for thinking records of drug trafficking would be found at 501 Tiffin Avenue. *See Frazier*, 423 F.3d at 532. Therefore, the records warrants were issued without probable cause.

Because the records warrants lacked probable cause based on a lack of nexus, we need not also decide whether the information supporting the warrants was stale.

**III.**

Though the records warrants lacked probable cause, the evidence used against Grant was seized pursuant to the later narcotics warrants. Under the fruit of the poisonous tree doctrine, any evidence "which police derivatively obtain[ed] from an unconstitutional search or seizure" is inadmissible. *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008) (citing *Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963). By extension, "information gained by law enforcement officers during an illegal search cannot be used in a derivative manner to obtain other evidence." *United States v. Hearn*, 496 F.2d 236, 244 (6th Cir. 1974). But this doctrine does not apply if "the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint.'" *Wong Sun*, 371 at 487 (quoting *Nardone v. United States*, 308 U.S. 338, 341 (1939)). In this case, attenuation does not apply. The affidavits supporting the 501 Tiffin Avenue and 1001 West Monroe narcotics warrants were nearly identical to the records warrants affidavits, and all three sets of warrants were issued within hours of each other. *See Brown v. Illinois*, 422 U.S. 590, 603–04 (1975). So this is not the case where the lawless conduct is significantly attenuated from the seizure of evidence. Nor has the government suggested this evidence had an "independent source." *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920). The only difference between the records and narcotics warrant affidavits was the inclusion of a description of the suspected contraband police found but did not seize at 501 Tiffin Avenue, and for the third set, a description of the items seized at 501 Tiffin Avenue. The evidence seized under the narcotics warrants was "come at by the exploitation

of [the] illegality" of police's prior unlawful search and thus must be suppressed. *See Wong Sun*, 371 U.S. at 488 (quoting Maquire, Evidence of Guilt, 221 (1959)).

Because the evidence seized under the narcotics warrants is excludable as fruits of the poisonous tree, we need not also decide whether the narcotics warrants were sufficiently particularized.

**IV.**

The exclusionary rule typically precludes the government from using evidence obtained in violation of the Fourth Amendment against the victim of the unlawful search or seizure. *Illinois v. Krull*, 480 U.S. 340, 347 (1987).[3] But the rule does not bar the government's use of evidence "obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *United States v. Leon*, 468 U.S. 897, 918–21 (1984). This good-faith exception applies when a "reasonably well trained officer" would not have known the search was illegal despite a judge's authorization. *Leon*, 468 U.S. at 922 n.23. But reliance on a warrant is objectively unreasonable if (1) the officer knowingly or recklessly provided false information; (2) the magistrate was not neutral and detached; (3) the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant is so facially deficient that an officer could not reasonably thinks it valid. *Leon*, 468 U.S. at 923 (internal quotations and citations omitted).

_____

[3] Although police did not use the records warrants to seize any physical evidence introduced against Grant in his subsequent proceedings, police gained information which they included in the affidavits for the narcotics warrants. Information obtained during an illegal search "cannot be used in a derivative manner to obtain other evidence." *Hearn*, 496 F.2d at 244. So unless the good-faith exception to the exclusionary rule applies to the records warrants, the information learned and evidence seized under the narcotics warrants must be excluded. *See also United States v. McClain*, 444 F.3d 556, 565 (6th Cir. 2005) (explaining that the good-faith exception to the exclusionary rule can apply when a warrant is granted based in part on evidence obtained through an illegal search).

Grant argues that the third scenario applies here. To establish this, he must show that the records warrant affidavits were so "bare bones" that they were "either completely devoid of facts to support the affiant's judgment that probable cause exists, or so vague as to be conclusory or meaningless." *United States v. White¸* 874 F.3d 490, 496–97 (6th Cir. 2017) (internal citations and quotations omitted). Though the records warrants lacked a sufficient nexus for probable cause, the affidavit must contain only a "minimally sufficient nexus between the illegal activity and the place to be searched" for the good-faith exception to apply. *Id.* (quoting *Carpenter*, 360 F.3d at 596).

The affidavits in support of the records warrants do not meet this minimal bar. The only fact alleged connecting 501 Tiffin Avenue to drug activity was a statement that Grant "parked to the rear, north side of a secondary location associated with Grant, 501 Tiffin Avenue, Sandusky, Ohio. [Police] then observed Grant walking away from the rear, north side of 501 Tiffin Avenue." Although Detective Brotherton discussed his training and experience and subsequent conclusion that Grant's visits to 501 Tiffin Avenue indicated drug trafficking, this inference alone cannot support probable cause. It had to be supported by some reference to drug activity at the residence. *See United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994); *see also White*, 874 F.3d at 500. None of the facts alleged directly tie 501 Tiffin Avenue to drug activity, let alone as a likely location for records of drug trafficking. *See Brown*, 828 F.3d at 385–86; *see also United States v. Ward*, 967 F.3d 550, 555 (6th Cir. 2020) (declining to apply the good-faith exception when police had "neither a tip alleging that [defendant] sold drugs from his home, a controlled buy at [defendant's] residence, evidence of numerous drug convictions, nor the prompt action by law enforcement").

At oral argument, the government pointed to *United States v. Washington* as authority establishing that the good-faith exception should apply. 380 F.3d 236 (6th Cir. 2004). But in that case, police saw the defendant "emerge[]" from the target residence "immediately prior to conducting the second drug deal," a fact glaringly absent from the case at bar. *Id.* at 243. The vehicle used for both drug deals was also registered to the target residence, a fact not alleged here. *Id.* Although the good-faith standard is less demanding than that for probable cause, the affidavit must draw a plausible nexus between suspected drug records and 501 Tiffin Avenue, and it failed to do so. Detective Brotherton's affidavit was thus so "lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," and the good-faith exception does not apply. *Carpenter*, 360 F.3d at 595. Therefore, the information police learned when they executed the records warrants must be suppressed, and the fruits of that initial unlawful search must be suppressed as well.

## V.

For the forgoing reasons we REVERSE the district court's denial of Grant's suppression motion, VACATE his conviction, and REMAND for further proceedings consistent with this opinion.